GOLDEN HOST WESTCHASE, INC. and Carl D. Morris
v. FIRST SERVICE CORPORATION, Flake & Co., Inc.,
First Service Corp. and Flake & Co., Inc., an Arkansas
Joint Venture

CA 89-82                                    778 S.W.2d 633

Court of Appeals of Arkansas
Division II
Opinion delivered October 18, 1989

*Law Offices of Thomas A. Adams III*, by: *Thomas A. Adams III* and *John W. Mara*; and *Harlan A. Webber*, for appellants.

*Arnold, Grobmyer & Haley, A Professional Association*, by: *Robert R. Ross*, for appellees.

DONALD L. CORBIN, Chief Judge. This appeal comes to us from Pulaski County Circuit Court, Second Division. Appellants, Golden Host Westchase, Inc., and Carl D. Morris, appeal an order dismissing an amended complaint regarding the lease of premises at Westchase Plaza against appellees, First Service Corporation, Flake and Co., Inc., and First Service Corp. and Flake and Co., Inc., an Arkansas Joint Venture.

This lawsuit is one of several actions resulting from problems encountered in the construction and operation of a Golden Host cafeteria at the Westchase Plaza Shopping Center. Appellant Golden Host Westchase, Inc., encountered problems in paying its debts, and liens were filed by the contractor and the equipment supplier. Golden Host also defaulted in its lease payments and promissory note to appellees.

On the morning of December 5, 1985, Flake and Company and First Service Corporation filed an unlawful detainer action against Golden Host in Third Division Circuit Court. On January 22, 1986, a first amended complaint was filed in that action, in which appellees added appellant Carl Morris as a defendant. The allegations for unlawful detainer contained within their original complaint were retained, and Morris was sued on his guaranty of the lease and promissory note signed by Golden Host. In their first amended complaint, appellees alleged that Golden Host had made no payments on the lease or the note.

At 4:18 p.m., December 5, 1985, Golden Host filed a complaint in chancery court against First Service and Flake regarding the lease of the premises at Westchase Plaza. Golden Host stated that appellees had made false representations of fact

regarding the property and that these false representations induced Golden Host to enter into the lease. Golden Host requested $150,000.00 in damages and also a reduction of rent due to the extent of its injury because of appellees' failure to comply with the lease agreement. On December 26, 1985, appellees filed their answer in chancery court and affirmatively pled that the court was without subject matter jurisdiction of the action, as it was simply a claim for money damages with no equitable remedies requested.

On January 16, 1986, appellees filed a motion to dismiss or, in the alternative, a motion to transfer and consolidate the action to Third Division Circuit Court. In that motion, it was stated that an action for unlawful detainer, which was filed on the morning of December 5, 1985, was currently pending in Third Division Circuit Court. In the motion, it was stated that both actions arose out of the same transaction and that the claims contained within the complaint filed in chancery court should be pursued as compulsory counterclaims pursuant to Ark. R. Civ. P. 13 in Third Division Circuit Court.

Ruling on this motion, the chancellor issued an order in which he stated:

> Now on this *28* day of *February*, 1986 comes on for hearing the Motion to Dismiss or in the Alternative Motion to Transfer and Consolidate filed herein by the Defendant, Flake & Company, Inc., et al. From all matters presented, including argument of counsel, the Court finds that the Motion to Transfer (per Rule 78(c)) should be granted.

> THEREFORE, it is by the Court ORDERED that the action filed herein should be transferred to the Circuit Court of Pulaski County.

The apparent effect of this order was to transfer the chancery court case to Second Division Circuit Court, but not to consolidate the two actions. The chancery court file was not actually delivered to Second Division Circuit Court until 1988.

On September 7, 1988, Golden Host and Morris filed a first amended complaint against First Service, Flake, and First Service Corp. and Flake and Co., an Arkansas Joint Venture. Carl Morris was added as a plaintiff in this action at that time.

This first amended complaint contained over twenty counts; all dealt with issues arising from the lease, promissory note, and guaranty, as well as the allegedly false representations made by appellees to Golden Host and Morris in regard to the lease and loan.

In Count I, it was alleged that appellees, in leasing the premises, made false representations upon which appellants relied and were induced thereby to enter into the lease with resulting financial damage. In Count II, appellants alleged that appellees' acts, omissions, and representations caused appellants "commercial frustration" in the amount of $1,500,000. In Count III, appellants alleged that appellees had committed to loan funds to Golden Host to complete the construction of the restaurant and to purchase equipment but that, before its completion, appellants refused to advance all sums as agreed. Appellants alleged that this caused them to default on their obligations for the equipment and construction, as well as the lease and loan payments to appellees. In Count III, they also alleged that appellees had breached the loan agreement and that appellants were entitled to an offset against appellees for all amounts due under the loan agreement and lease, as well as damages sustained from a judgment entered against appellants in the amount of $182,019.00.

In Count IV of their first amended complaint, appellants alleged that appellees had made fraudulent representations regarding the contents of the note and guaranty, which induced appellants to enter into the loan and caused damage to their financial standing, credit, and reputation in the industry and the community. In Count V, appellants stated that appellees' conduct with regard to the note, guaranty, and loan, and their refusal to properly fund the loan were acts of gross negligence. In Count VI, it was alleged that appellees' breach of their duty of good faith performance implied in these agreements caused appellants' damages. In Count VII, appellants alleged that appellees' breach of their agreement to loan money to appellants interfered with appellants' contractual relationships with the suppliers and installers. Appellants asserted damages in the amount of $182,019.00 from the judgment entered against appellants and also claimed that appellants were entitled to judgment against appellees for their tortious interference with appellants' contrac-

tual relationships. In Count VIII, appellants requested punitive damages for the tortious interference with appellants' contractual relationships and false representations in the amount of $1,500,000,00. In Count IX, appellants stated that appellees had breached their fiduciary duty and their duty of good faith and fair dealing in failing to loan all of the money to appellants. In Count X, appellants stated that, because of this breach, they had sustained damages in the amount of $182,019.00.

Count XI included a claim that appellees had engaged in a scheme to defraud appellants regarding the agreements; Count XII included a civil conspiracy charge; and Count XIII included an allegation that appellees had engaged in a course of conduct amounting to common law fraud. In Count XIV, appellants alleged that appellees had engaged in "malicious and tortious breach of conduct." Count XV asserted a breach of contract by appellees. In Count XVI, Morris included a claim that appellees had engaged in a course of action which resulted in the infliction of emotional and mental distress, as well as physical stress; Count XVII similarly alleged that this course of conduct constituted intentional infliction of emotional distress. Morris asserted in Count XVIII that appellees' course of action diminished his earning ability and resulted in financial damage to him; in Count XIX, Morris asserted that he sustained diminished standing in the community and in the restaurant business community. In Count XX, appellants requested attorney's fees. In their prayer for relief, appellants requested judgment for $1,682,019.00, with punitive damages of $1,500,000.00.

On September 30, 1988, appellees moved to dismiss in Second Division Circuit Court. In that motion, appellees stated that the issues in the first amended complaint in Second Division Circuit Court were tried in Third Division Circuit Court in January 1987 and resulted in a judgment on April 10, 1987. Appellees stated in the motion that, on April 14, 1987, the Third Division Circuit Court had dismissed the counterclaim of appellants. Appellees also stated that appellants' first amended complaint in Second Division Circuit Court merely restated the basic transaction which was the basis of the counterclaim which was tried in Third Division Circuit Court.

Attached to this motion was appellants' counterclaim which

was filed in November of 1986 in Third Division Circuit Court. In Count I of that counterclaim, appellants asserted that appellees breached their agreement to loan funds to appellants in connection with the construction and lease of the premises and that this breach caused appellants to default on their obligations for the equipment, lease payments, and repayments of the loan. Appellants asserted that they were entitled to an offset of all amounts due under the loan agreement and lease and that they were entitled to damages in the amount of $182,019.00. In Count II of the counterclaim, appellants asserted that appellees breached the loan agreement and thereby intentionally and tortiously interfered with appellants' ability to perform their contractual relationships with the equipment suppliers and installers and that this caused appellants damages because of the judgment entered against them in the amount of $182,019.00. Punitive damages of $500,000.00 were requested. In Count III of the counterclaim, appellants asserted that appellees had breached a fiduciary duty and duty of good faith and fair dealing with regard to the loan agreement by failing to loan all of the money agreed; that appellants had sustained damages in the amount of $182,019.00; and that appellants were entitled to an offset against all amounts due under the loan agreement, note, guaranty and lease.

Also attached to appellees' motion to dismiss was the Third Division's order of dismissal of appellants' counterclaim on April 14, 1987. In that order, the circuit judge stated:

> On the 10th day of April, 1987, Judgment having been entered in the referenced matter on behalf of the Plaintiffs comes on now for hearing the Counter-Claim of the Defendants, Golden Host Westchase, Inc. and Carl Morris.
>
> From all matter presented the court finds that the Counter-Claim should be denied and;
>
> THEREFORE IT IS BY THE COURT ORDERED that the Counter-Claim instituted herein by Golden Host Westchase, Inc. and Carl Morris is dismissed at cost to the Defendants.

Also attached to the motion to dismiss was the judgment entered on April 10, 1987, by the Third Division Circuit Court, in

which appellees were awarded judgment on the promissory note and which reflected the jury's finding of betterments and improvements to the property in the amount of $67,000.00. The judgment stated:

> At the conclusion of all of the evidence upon Motion of the Plaintiff the court removed the case from the jury as to all issues except any right of set off and granted a directed verdict to Plaintiff on all issues and awarded damages as follows:

> Money due and owing on the promissory note is $259,438.69; interest from the date of disbursement through January 28, 1987 is $37,776.85; and rent from October 1, 1985 through August 31, 1986 is $53,735.00.

> Upon proper instruction by the court and after argument of counsel the jury retired to consider its verdict, and after deliberating thereon returned the following verdict:

> We, the jury, find that the Plaintiffs received the value of betterments and improvements in the sum of *$67,000.*

> Signed: *Timothy Lawton /s/*
> Foreman

> IT IS, THEREFORE, BY THE COURT, CONSIDERED, ORDERED AND ADJUDGED that Flake and Co., Inc., and First Service Corp., an Arkansas Joint Venture and Flake & Co., Inc., Plaintiffs, have and recover of and from Golden Host Westchase, Inc. and Carl Morris, Individually, Defendants the sum of $283,950.54, with interest thereon from this date until paid at the rate of ten percent (10%) per annum, together with all their costs herein expended, for all of which execution may issue.

In the response to the motion to dismiss, appellants argued that the issues raised in the Second Division Circuit Court action were not *res judicata.* To their brief in support of their response, they attached a copy of appellees' first amended complaint, dated January 22, 1986, in the Third Division Circuit Court action, which added Carl Morris as a party defendant. Appellants also attached one page from the transcript of the trial in Third

Division Circuit Court. In that case, the circuit judge granted a directed verdict to appellees and stated:

> THE COURT: In response to the plaintiff's motion for a directed verdict, the Court has concluded that there are no issues of fact remaining regarding liability, that the defendants have breached the agreement, that the rentals due, the principal and interest is not controverted, and the only remaining issue to be resolved by the jury is the value of the improvements and betterments that were constructed under these agreements between the parties that issued to the benefit of the plaintiffs.

> MR. McCLAIN: For the record, I object to the directed verdict.

Also attached to the appellants' response to the motion to dismiss was the affidavit of Carl Morris; in this affidavit, Morris admitted that a counterclaim was filed in the Third Division Circuit Court action and that he did not present evidence regarding the counterclaim. In this affidavit, Morris stated:

10. "That I had my attorney, Thomas H. McClain, Jr. file a counterclaim in Cause Number 85-011053 filed in the Circuit Court and described in paragraph 5 above.

11. "That neither myself nor my attorney filed or presented any evidence or tried any cause of action or issue contained in the counterclaim filed in Cause Number 85-011053.

12. "That the previously described counterclaim was dismissed on April 10, 1987, nearly three months after the trial of Cause Number 85-011053 without a trial on the merits as to any issue or cause of action alleged in said counterclaim.

13. "That none of the causes of action and/or issues raised in the Amended Answer filed in the instant action have been tried, determined or litigated by any court in the State of Arkansas.

In November 1988, the Second Division Circuit Court made findings of fact and conclusions of law in the case at bar, and an

order of dismissal consistent with those findings was entered on December 6, 1988. In his findings, the circuit judge stated that Golden Host erroneously made no attempt to prove its counter-claim in the case tried in Third Division Circuit Court, and that Morris should have presented his claims at that trial:

5. Morris was not a party to the Chancery Court case (this case). By an Amendment to this action, a claim against Flake of an intentional tort has been asserted by Morris. If that claim has arisen since April 14, 1987, he should assert the claim in an independent action, not an Amendment here. Otherwise, our Rules clearly require Morris to assert all claims he had against Flake in the trial heard by Judge Digby.

6. Golden Host stands in a different position. It brought a cause of action against Flake. That cause has been in limbo for two years; however, it was alive and well on January 28, 1987. There is no issue, Golden Host made no attempt to prove its Cross-Complaint in the case heard by Judge Digby. It chose instead to await its trial on its own Complaint, which was then pending in a Court having concurrent jurisdiction with that Court hearing the case on January 28, 1987.

7. While this Court can find no precedent it would appear to the Court that our Rules required Golden Host to go forward with all claims it had on January 28, 1987. It could not choose to remain silent and then assert those claims even though those claims were set forth in another action then pending.

Appellant raises the following points for reversal:

I.

THE CIRCUIT COURT JUDGE'S DECISION GRANTING THE APPELLEE'S MOTION TO DIS-MISS THE APPELLANT'S LAWSUIT NAMING THE APPELLEES AS DEFENDANTS WHICH CON-TAINED CAUSES OF ACTION AND CLAIMS NOT PREVIOUSLY ADJUDICATED IN A LAWSUIT FILED BY THE APPELLEES NAMING THE AP-

PELLANTS AS DEFENDANTS WAS CLEARLY ERRONEOUS FOR THE REASON THAT THE APPELLANT'S LAWSUIT WAS COMMENCED AT THE SAME TIME OF AS THE APPELLEE'S LAWSUIT, WAS NOT CONSOLIDATED WITH APPELLEE'S LAWSUIT, AND BECAUSE APPELLEES WERE AWARE THE APPELLANT'S LAWSUIT WAS PENDING AT TIME OF THE TRIAL OF THE APPELLEE'S LAWSUIT.

## II.

THE CIRCUIT COURT JUDGE'S DECISION GRANTING THE APPELLEE'S MOTION TO DISMISS THE APPELLANT'S LAWSUIT WAS CLEARLY ERRONEOUS FOR THE REASON HE RELIED ON INCORRECT, FALSE, ERRONEOUS, AND/OR INACCURATE FINDINGS OF FACT AND CONCLUSIONS OF LAW.

## III.

THE CIRCUIT COURT JUDGE'S DECISION GRANTING THE APPELLEE'S MOTION TO DISMISS THE APPELLANT'S LAWSUIT ON THE BASIS OF *RES JUDICATA* WAS CLEARLY ERRONEOUS.

## IV.

THE CIRCUIT JUDGE'S DECISION GRANTING THE APPELLEE'S MOTION TO DISMISS THE APPELLANT'S LAWSUIT WAS CLEARLY ERRONEOUS AS IT VIOLATED THE APPELLANT'S RIGHT TO TRIAL BY JURY AND DEPRIVED APPELLANTS OF THEIR DAY IN COURT.

With regard to Point I, it should first be noted that appellants offered no proof as to the order in which the lawsuits were filed. The record clearly demonstrates that Golden Host's original complaint against appellees was filed in chancery court at 4:18 p.m. on December 5, 1985. Although appellees' original complaint against Golden Host is not in the record, it is described in

appellees' motion to dismiss or transfer and consolidate, dated January 16, 1986, and filed in chancery court. In that motion, appellees stated that the Third Division Circuit Court action in unlawful detainer was filed the *morning* of December 5, 1985.

Although it is difficult to discuss appellants' first point on appeal without getting into the claim preclusion aspect of *res judicata*, that will be specifically discussed in Point III below. The considerations inherent in the doctrine of *res judicata* are definitely relevant to the construction and application of Ark. R. Civ. P. 13(a), however. That rule provides in pertinent part:

> A pleading shall state as a counterclaim any claim which, at the time of filing the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action . . . .

Because appellees' lawsuit was filed in Third Division Circuit Court several hours before the chancery court action was filed by Golden Host, the chancery court action cannot be considered to have been "pending" within the terms of Ark. R. Civ. P. 13(a)(1).

"The reason for Rule 13 is to require parties to present all existing claims simultaneously to the court or be forever barred, thus preventing a multiplicity of suits arising from one set of circumstances." *Bankston* v. *McKenzie*, 288 Ark. 65, 67, 702 S.W.2d 14, 15 (1986).

In the case at bar, appellants argue that they were not given an opportunity to present the issues raised in their counterclaim at the trial in Third Division Circuit Court. The wording of the order dismissing the counterclaim, the judgment rendered in the action, the statements made by the Third Division Circuit Court, and appellant Morris' affidavit support appellees' argument that the directed verdict was granted at the conclusion of *all* of the evidence, and that appellants did have the opportunity to present evidence on their counterclaim if they so desired. Appellants have

brought forth nothing in the record to demonstrate that they were not given an opportunity to present their claims at trial in Third Division Circuit Court.

Appellants also argue that the April 14, 1987, order entered by the Third Division Circuit Court does not indicate whether it was with or without prejudice in dismissing appellants' counterclaim. The wording of the April 10, 1987, judgment, as well as that of the April 14, 1987, order, and the ambiguity of the only page of that transcript included in this record (Tr. 142), indicate that appellants' counterclaim was indeed dismissed with prejudice.

Appellants also assert that, if appellees had desired that all claims among the parties be tried in Third Division Circuit Court, appellees had the burden of making sure that appellants' chancery court lawsuit was consolidated with the Third Division Circuit Court lawsuit; appellants also assert that appellees failed to meet this burden. Appellants, however, give no citation to authority for this argument. An assignment of error unsupported by convincing argument or authority will not be considered on appeal, unless it is apparent, without further research, that the assignment of error is well taken. *Gen. Elec. Supply Co.* v. *Downtown Church of Christ*, 24 Ark. App. 1, 746 S.W.2d 386 (1988).

With regard to Point II, that the Second Division Circuit Court made erroneous findings in its order of dismissal, appellants are partially correct. Appellants assert that, in paragraph 2 of the findings of fact and conclusions of law in the order of dismissal, the circuit court erroneously stated that, in appellants' counterclaim in Third Division Circuit Court, they pled four affirmative allegations: "(1) failure of Flake to loan money as promised; (2) unlawful interference with a third-party contract; (3) fraud in securing the lease agreement; and (4) breach of fiduciary relationship." Appellants are correct in asserting that they did not state a cause of action for fraud in securing the lease agreement in that counterclaim. We agree with the circuit court's findings that appellants' claims in this lawsuit should have been included and tried as compulsory counterclaims in the Third Division Circuit Court action and are barred by the claim preclusion aspect of *res judicata*; therefore, this error does not

warrant reversal. *See Ark. Dep't of Human Services* v. *Shipman*, 25 Ark. App. 247, 756 S.W.2d 930 (1988).

██ For their third point on appeal, appellants assert that the circuit court erred in dismissing the claims in the case at bar on the basis of *res judicata*. The cases dealing with this issue do not draw a distinct line beyond which the principle of *res judicata* invariably applies and within which it does not; this court has noted that the very nature of litigation makes that impossible. *McDaniel Bros. Constr. Co.* v. *Simmons First Bank of Jonesboro*, 24 Ark. App. 106, 108, 749 S.W.2d 348, 349 (1988). If claims that were made or could have been made grew out of the same transaction, and if the forum has jurisdiction of the person and subject matter and the parties are the same, the doctrine of *res judicata* may be applied. *McDaniel Bros.*, 24 Ark. App. at 108-09, 749 S.W.2d at 349. The doctrine of *res judicata* applies not only to those issues which have actually been tried, but also to those which could have and therefore should have been determined in the one action. *McDaniel Bros.*, 24 Ark. App. at 109, 749 S.W.2d at 349.

██ In *Swofford* v. *Stafford*, 295 Ark. 433, 434, 748 S.W.2d 660, 661 (1988), the supreme court stated:

> The claim preclusion part of the doctrine of res judicata bars relitigation of a subsequent suit when (1) the first suit resulted in a judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action which was litigated or could have been litigated but was not; and (5) both suits involve the same parties or their privies.

In *Swofford*, 295 Ark. at 435, 748 S.W.2d at 662, the court noted that, where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies:

> Issues and remedies raised in the subsequent suit do not have to be identical to those raised in the initial suit in order for the claim preclusion part of res judicata to apply. In *Benedict* v. *Arbor Acres Farm,*

*Inc.*, 265 Ark. 574, 577, 579 S.W.2d 605, 607 (1979), we wrote:

> The law of *res judicata* provides that a prior decree bars a subsequent suit when the subsequent cause involves the same subject matters as that determined or which could have been determined in the former suit between the same parties; the bar extends to those questions of law and fact which "might [well] have been but were not presented."

In *Taggart* v. *Moore*, 292 Ark. 168, 171, 729 S.W.2d 7, 9 (1987) (citations omitted), we wrote:

> One of the main purposes of the doctrine of res judicata is to put an end to litigation by precluding a party who has had the opportunity for one fair trial from drawing the same controversy into issue a second time before the same or a different court. . . . Res judicata applies even if the issue was not litigated in the first trial if it should have been included in the former trial.

> Accordingly, we affirm the ruling of the trial court that the case at bar is barred by the claim preclusion part of the doctrine of res judicata.

In order for the doctrine of *res judicata* to apply, it must appear that the particular matter was raised and determined or was necessarily within the issues and might have been litigated in the previous action. *See Talbot* v. *Jansen*, 294 Ark. 537, 540, 744 S.W.2d 723, 724 (1988), where the court stated:

> In this case, the point of controversy has at all times been the misstatement of liabilities. In the previous suit, appellants elected to sue for breach of contract. The receiver knew about the fraud issue, but did not raise it. The complaint was dismissed. Appellants appealed, but did not follow through. In the case at bar, they allege the same facts, but rename their action "fraud," and seek punitive damages. The facts are identical. *Res judicata* applies.

294 Ark. at 540, 744 S.W.2d at 725. *See also Ward* v. *Davis*, 298

Ark. 48, 765 S.W.2d 5 (1989); *Martin* v. *Citizens Bank of Beebe*, 283 Ark. 145, 671 S.W.2d 754 (1984). Appellants are, therefore, incorrect in asserting that *res judicata* does not apply if the causes of action in the two lawsuits are different.

Appellees argue that the claims that appellants assert in the case at bar arose out of the same set of facts that gave rise to appellants' counterclaim in the Third Division Circuit Court lawsuit. Although, in the case at bar, appellants have asserted additional claims, such as fraud and intentional infliction of emotional distress, all of the claims arise out of the same set of facts that served as the basis for the Third Division Circuit Court lawsuit.

Carl Morris should have brought his claims against appellees in the Third Division Circuit Court action, because he was not even a party to the Second Division Circuit Court action until appellants' first amended complaint was filed in 1988, long after the trial in Third Division Circuit Court.

In their final point for reversal, appellants argue that the circuit court's dismissal of this action violated their constitutional right to trial by jury. Appellants argue that the doctrine of *res judicata* presumes that a litigant has already had his day in court and that they were denied that day; consequently, their constitutional rights to due process and trial by jury were violated. Here, however, appellants *did* have their day in court with regard to the claims set forth in their counterclaim in Third Division Circuit Court, even though they elected not to pursue those claims. In *Arkansas State Highway Commission* v. *Munson*, 295 Ark. 447, 449, 749 S.W.2d 317, 318 (1988), the supreme court stated that constitutional issues may be precluded by the doctrine of *res judicata*. It is not necessary that we hold that appellants' constitutional rights have been violated because we agree that appellants should have presented all their claims as compulsory counterclaims in the previous action and that the issues in the case at bar are *res judicata*.

We cannot say that the trial court erred in dismissing the amended complaint and, therefore, affirm.

Affirmed.

JENNINGS and MAYFIELD, JJ., agree.