## NEOSHO CONSTRUCTION CO. v.
## WEAVER-BAILEY CONTRACTORS

CA 99-692            10 S.W.3d 463

Court of Appeals of Arkansas
Division I
Opinion delivered February 9, 2000

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.,* by: *Tim E. Howell,* for appellant.

*Davidson Law Firm, LTD,* by: *Stephen L. Gershner,* for appellee.

OLLY NEAL, Judge. In this case, we are asked to review the circuit court's denial of appellant's motion to compel arbitration. We affirm.

On August 1, 1997, appellant, a general contractor, entered into a $12.5 million subcontract with appellee. Appellee was to perform concrete-paving work on a project in Crittenden County. Work was scheduled to begin on August 7, 1997, and be completed by March 3, 1998. Appellee performed the job but was not satisfied with the amount paid by appellant. On September 25, 1998, appellee sued appellant in Pulaski County Circuit Court seeking $2,227,533.66 in damages. According to the complaint, an agreed-upon change order had expanded appellee's duties to include the trimming of a soil cement base, which was to have been constructed by appellant to certain specifications. Appellee alleged that appellant failed to provide the required base, thus forcing appellee to use excess concrete-paving material and to perform additional fine grading and milling work. Further, appellee alleged that appellant had failed to allow work to begin on time, failed to provide a railroad spur to transport materials, and failed to close a highway crossing, all resulting in costly delays. By an amended complaint, appellee sought an additional $366,172.38 that appellant had allegedly wrongfully retained.

Appellant responded to the complaint by removing the case to federal court pursuant to 28 U.S.C.S. § 1332 (Supp. 1999) (diversity of citizenship and an amount in controversy in excess of $75,000). In its answer, appellant asserted as an affirmative defense that some or all of appellee's claims were arbitrable and, in an accompanying counterclaim, alleged that appellee did not complete its work on time, performed defective work, and caused appellant to incur additional costs. A jury trial was demanded on "all the issues in the case."

Several months later, over appellant's objection, appellee secured a remand of the case to state court. Within thirty days thereafter, appellant filed a motion to compel arbitration. The motion was based upon paragraph four of the subcontract, which reads as follows:

> Contractor may at any time, by a written order and without notice to sureties, make changes in the drawings and specifications, omit certain work, or require additional work to be performed by the Subcontractor. If such changes, omissions or additions shall increase or decrease the cost of materials or the amount of the work or the time required in its performance, or shall increase or decrease the cost of the work to Subcontractor, the subcontract price shall be increased or decreased to compensate for such changes, omissions or additions. If Subcontractor desires to make any claim for adjustment under this paragraph, notice of such claim must be given in writing to Contractor within ten (10) days from the date the change is ordered. Changes for extra, additional or different work executed by Subcontractor, without previous written order given by Contractor, will not be allowed except under emergency conditions whereby such work is performed to safeguard or mitigate damage to work, equipment and property and provided Contractor is notified within 24 hours of work commencement. In any event, however, the Subcontractor agrees to proceed with the work as changed when so ordered in writing by the Contractor so as not to delay the progress of the work, notwithstanding any pending determination of the value thereof. In the event the parties are unable to agree as to the proper amount of any claim submitted under the terms of this paragraph, the parties agree to accept the determination of three arbitrators, one of which shall be chosen by each party and the third of which shall be selected by the other two arbitrators.

Appellee opposed the motion to compel on the grounds that the parties' dispute did not fall within the scope of the arbitration agreement and that appellant, by removing the case to federal court, filing an answer and counterclaim, demanding a jury trial, and opposing remand of the case, had waived its right to seek arbitration. After a hearing, the circuit court agreed with appellee on both grounds and entered an order denying arbitration. This appeal followed. We note that an order denying a motion to compel arbitration is an appealable order. *Terminix Int'l Co. v. Stabbs*, 326 Ark. 239, 930 S.W.2d 345 (1996).

■ Both parties to this appeal agree that their contract involved interstate commerce. Therefore, the contract is governed by the Federal Arbitration Act. *See* 9 U.S.C.S. § 1 (1997); *Walton v. Lewis*, 337 Ark. 45, 987 S.W.2d 262 (1999). State and federal courts have concurrent jurisdiction to enforce arbitration agreements pursuant to the terms of the Federal Arbitration Act. *Walton v. Lewis, supra.* When reviewing a denial of a motion to compel arbitration, the appellate court's review is *de novo. Id.*

■ ■ A written agreement to arbitrate is valid and enforceable under federal law. 9 U.S.C.S. § 2. If a suit is brought upon an issue that is arbitrable, a trial should be stayed until arbitration is had in accordance with the terms of the agreement. 9 U.S.C.S. § 3. The Federal Arbitration Act is a congressional declaration of a liberal federal policy favoring arbitration agreements. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. *Id.* Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver. *Id.*; *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88 (4th Cir. 1996). Nevertheless, a party may not be compelled to arbitrate a grievance unless he has agreed to do so. *Fleet Tire Serv. of North Little Rock v. Oliver Rubber Co.*, 118 F.3d 619 (8th Cir. 1997); *International Union, United Auto., Aerospace, & Agri. Implement Workers of Am. v. General Elec. Co.*, 714 F.2d 830 (8th Cir. 1983). Arbitration is simply a matter of contract between the parties. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995). The question of whether a dispute should be submitted to arbitration is a matter of contract construction. *International Union, supra.* The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally. *May Constr. Co., Inc. v. Benton Sch. Dist. No. 8*, 320 Ark. 147, 895 S.W.2d 521 (1995). Therefore, we should seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself, with doubts and ambiguities being resolved in favor of arbitration. *Id.*

With these standards in mind, we address appellant's argument that the circuit judge erred in finding that the disputes in this case are outside the scope of the contract's arbitration clause. According to appellant, the parties agreed to arbitrate all disputes regarding

changes in work ordered by appellant. Appellant claims that appellee is seeking damages based upon the allegation that its duties under the subcontract had been changed, thus making the disputes arbitrable under the above-quoted paragraph four. Appellee argues that the scope of paragraph four is narrower than appellant would have it, claiming that the clause applies only to disputes over the dollar amount due as the result of *written* change orders or changes ordered under emergency conditions.

We agree with appellee's interpretation. Paragraph four begins by providing that the contract may, *by written order*, be changed to require additional work by appellee. It provides further that, if the change increases the cost of materials, the amount of time required, or appellee's costs, the subcontract price will be increased accordingly. If appellee wants to make "any claim for adjustment under this paragraph," notice is required. Next, paragraph four provides that changes made by appellee without a prior written order will not be allowed except under emergency conditions where the work is performed to safeguard work, equipment, or property. Following that is a clause which reads that, in any event, appellee agrees to proceed with work as changed when so ordered *in writing*, notwithstanding any pending determination of the value of the work. Finally, the arbitration clause provides that if the parties are unable to agree "as to the proper amount of any claim submitted under the terms of this paragraph," they will accept a determination made by three arbitrators.

■ Although appellee's lawsuit seeks, at least in part, additional money for additional work performed, there is nothing to show that the additional work was performed pursuant to a written change order or under emergency conditions. In fact, appellant's counsel told the circuit judge that he was not aware that any of the changes mentioned in appellee's complaint were made pursuant to written change orders. Under the terms of the contract, appellee did not agree to arbitrate all disputes regarding changes in work orders but only those made by written order or in response to an emergency. Neither of those conditions existed here. Therefore, the trial judge was correct in holding that the parties' dispute was not arbitrable.

Having affirmed the trial judge's interpretation of the arbitration agreement, it is unnecessary for us to review his ruling that arbitration was also barred by the doctrine of waiver.

Affirmed.

PITTMAN and JENNINGS, JJ., agree.