Joseph M. HART; Cheryl Lynn Hart; and Vinewood
Communications *v.* Norman D. McCHRISTIAN

CA 00-50 36 S.W.3d 357

Court of Appeals of Arkansas
Division II
Opinion delivered October 18, 2000
[Petition for rehearing denied November 29, 2000.]

*Harrington, Miller, Neihouse & Krug, P.A.*, by: *Wayne Krug*, for appellants.

*John R. Eldridge, III,* for appellee.

JOSEPHINE LINKER HART, Judge. Appellants Joseph and Cheryl Hart appeal an order of the chancellor confirming an arbitration award and denying their petition to vacate that award. They also seek review of the court's order holding them in civil contempt. We reverse and remand that part of the judgment concerning the arbitration award because we conclude there is a need for further development and clarification in this case. We also modify the contempt order concerning the punishment assessed by the chancellor. In all other respects, we affirm.

On January 27, 1990, appellants Joseph and Cheryl Hart, appellee Norman McChristian, and a corporation called DD&B, Inc., formed a limited partnership called Vinewood Communications for the purpose of owning and operating a radio station in northwest Arkansas. Appellants were the company's general partners and owned ten percent of the partnership units. Appellee was a limited partner and owned eighteen percent of the partnership units. The remaining seventy-two percent of the units were owned by DD&B, the other limited partner, who is not a party to this appeal.

The agreement gave the general partners exclusive discretion in the management and control of partnership business. However, it also provided that the general partners could be removed upon a proposal for their removal being made by the limited partners holding fifty percent of the partnership units. Following such a proposal, removal would be accomplished by agreement of the limited partners holding seventy-five percent of the partnership units. If the general partners objected to their removal, the matter was to be "submitted within thirty (30) days of such notice of objection . . . to binding arbitration. . . ."

On June 16, 1998, DD&B, Inc., assigned all of its partnership units to appellee in consideration for $275,000. This transaction resulted in appellee holding ninety percent of the partnership units. On July 13, 1998, appellee notified appellants of the assignment and of a scheduled meeting wherein their removal as general partners would be voted upon. According to appellee, appellants were removed at the meeting that was held on August 17, 1998. Following these events, appellee filed a complaint in Washington County Chancery Court alleging that appellants had breached the limited partnership agreement by mismanaging the partnership, misappropriating partnership assets, and operating the company for their personal benefit. Appellee sought an accounting, the appointment of a receiver, and an order requiring arbitration should appellants object to their removal. In connection therewith, appellee filed a demand for arbitration on January 25, 1999.

On February 22, 1999, a hearing was held before the chancellor during which appellants objected to arbitration. They argued that, at the time the removal vote was taken, appellee was the holder of only eighteen percent of the partnership units and thus had no authority to remove them as general partners. The question of appellee's authority to remove them, they contended, should be resolved prior to arbitrating the question of whether their conduct merited removal. The chancellor disagreed and ruled that their argument could be made to the arbitrators. A decree was entered ordering the parties to arbitration.

The arbitration hearing took place on May 10, 1999. At its conclusion, the arbitrators determined that the removal of the general partners was appropriate. The chancellor confirmed the arbitrators' award on June 28, 1999, appointed a receiver as requested by appellee, and restrained appellants from interfering with the receiver or the company assets. The receiver was directed to take possession of all partnership assets and to file an application with the Federal Communications Commission to transfer control of Vinewood Communications to a successor general partner.

On July 12, 1999, appellants filed motions to amend or vacate the arbitrators' award and the court's order confirming the award. Appellants again raised the issue of appellee's authority, as an eighteen percent owner, to effect their removal. They also claimed that the arbitrators had violated several procedural rules concerning

notice, exchanges of evidence, and requests for continuances. On July 14, 1999, appellee filed a motion asking that appellants be held in contempt for violating the chancellor's June 28 order by filing an objection with the FCC to the transfer of Vinewood Communications to the receiver. All these matters were addressed at a hearing on September 8, 1999. Following the hearing, the chancellor denied appellants' motions to vacate or modify the arbitrators' award and entered a judgment on the arbitration award commensurate with Ark. Code Ann. § 16-108-214 (1987). In addition, as requested by appellee, the chancellor held appellants in contempt on the ground that the opposition they filed with the FCC interfered with the receiver, in violation of the June 28 order. He directed appellants to withdraw their opposition, and, as punishment, to pay $7,118.90, which was the full cost of the arbitration proceedings, plus other costs incurred as the result of the contempt, and attorney fees "as subsequently determined." This appeal is brought from that judgment and order.

■ On review of a chancery matter, "the whole case is open for review; therefore, all issues raised in the court below are before us for decision, and [a] trial *de novo* on appeal in chancery involves determination of both fact questions and legal issues." *Bradford v. Bradford*, 34 Ark. App. 247, 248, 808 S.W.2d 794, 795 (1991). *See also Ferguson v. Green*, 266 Ark. 556, 587 S.W.2d 18 (1979); *Lewis v. Lewis*, 255 Ark. 583, 502 S.W.2d 505 (1974). In our *de novo* review, we will reverse only on grounds argued by appellant. *See, e.g., Country Gentlemen, Inc. v. Harkey*, 263 Ark. 580, 569 S.W.2d 649 (1978). Moreover, we will affirm the chancellor's findings unless the findings are clearly erroneous. *See* Ark. R. Civ. P. 52(a); *see also Adkinson v. Kilgore*, 62 Ark. App. 247, 970 S.W.2d 327 (1998). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Smith v. Parker*, 67 Ark. App. 221, 224, 998 S.W.2d 1, 3 (1999).

Appellants' first argument has two components: 1) whether the chancellor erred in ordering the parties to arbitrate the issue of appellee's authority to seek their removal; and 2) whether appellee actually had the authority to seek their removal, *i.e.*, whether he in fact held seventy-five percent of the partnership units at the time the removal vote was taken. As to the first component, we agree

with the chancellor's decision to send the issue to arbitration. Article XI of the written partnership agreement sets out a method by which a general partner may be removed. It establishes the percentage of ownership required to propose removal, the percentage required to effect removal, and the grounds for removal. It then provides that, if the general partner objects to removal, the matter shall be submitted to arbitration. The arbitrators shall then render "a decision as to whether or not the removal of the General Partner was appropriate under the circumstances."

■ Arbitration is simply a matter of contract between parties. *Neosho Constr. Co. v. Weaver-Bailey Contractors*, 69 Ark. App. 137, 10 S.W.3d 463 (2000). The question of whether a dispute should be submitted to arbitration is a matter of contract construction. *Id.* The same rules of contract construction and interpretation apply to arbitration agreements as apply to agreements generally. *Id.* Therefore, we should seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself, with doubts and ambiguities being resolved in favor of arbitration. *Id.*

■ The contract in this case does not, as appellants suggest, distinguish between the undisputedly arbitrable issue of whether the partner's conduct merits removal and the allegedly nonarbitrable issue of whether those seeking removal have the authority to do so. The arbitrators are given the broad task of determining whether the removal of the partners was "appropriate under the circumstances." If we resolve all doubts in favor of arbitration, the "appropriateness" of a partner's removal encompasses the threshold question of whether removal was appropriately sought in the first place. Thus, the chancellor was correct in directing the parties to arbitrate this issue.

■ Having decided that the parties were properly ordered to arbitration, we turn to appellants' argument that appellee did not have the authority to remove them as general partners because he held only eighteen percent of the partnership units at the time the removal vote was taken. Appellants claim that the purported assignment from DD&B to appellee was deficient, thus depriving appellee of the authority to seek or vote on their removal. Our review of this argument is made difficult by the fact that appellants make no citation to authority. Generally, we do not address arguments that are not supported by convincing argument or authority. *See Golden*

*Host Westchase, Inc. v. First Serv. Corp.*, 29 Ark. App. 107, 778 S.W.2d 633 (1989). However, we have indicated that an unsupported assignment of error will be addressed if it is apparent without further research that it is well-taken. *See id.*

While we do not address the merits of appellants' arguments on this point, it is apparent without further research that the issue requires a remand for further action. Despite their repeated requests, appellants were unable to obtain a clear ruling from either the chancellor or the arbitrators regarding appellee's authority to seek their removal. At the February 2 hearing in chancery court, appellants specifically objected to arbitration on the basis that appellee's authority to remove them should be determined first. The chancellor ruled that "arbitration...is the place to raise [this]." However, when appellants attempted to raise the issue in arbitration, the arbitrators questioned whether it was within their purview. Arbitrator Bradford, in response to appellants' request to broach the issue, said, "[n]o, that's not what we're doing today. What we're doing today is, we're going to have an arbitration hearing over whether or not the removal of the general partners was appropriate under the circumstances pursuant to the ... limited partnership agreement." Later, Bradford said that appellee's allegations and exhibits showing the assignment and notice of removal made a preliminary showing of a right to arbitrate but he also said that "apparently the [chancellor] heard the same thing, because he ordered that this matter would be arbitrated." The arbitration hearing that followed was devoted to the issue of appellants' alleged misconduct in connection with their management of the partnership. There was no indication in either the transcript of the arbitration hearing or the written award that the arbitrators actually considered and ruled upon appellants' argument.

At the September 8 hearing in chancery court following arbitration, appellants argued that the arbitrators failed to address the issue of appellee's authority to remove them. The chancellor ruled that if the arbitrators "declined to [address the issue], that's their prerogative...." When appellants argued again that arbitration was not proper in the first instance, the chancellor said that he had already ruled on the matter.

It is clear that appellants strove for a determination of whether appellee possessed the authority to oust them. However,

the chancery court thought the matter should be resolved by the arbitrators; and the arbitrators, it appears, may well have thought the matter had been resolved by the chancellor, thus leaving the issue in a legal limbo. In equity cases, we have recognized that the interests of justice may be served by remanding a case to allow it to be more fully developed or clarified. *See Arkansas State Hwy. Comm'n v. Elliot,* 234 Ark. 619, 353 S.W.2d 526 (1962); *Jones v. Ray,* 54 Ark. App. 336, 925 S.W.2d 805 (1996); *McLain v. McLain,* 36 Ark. App. 197, 820 S.W.2d 295 (1991). Accordingly, we reverse and remand this issue with directions to the chancellor to order the arbitrators to clarify whether they addressed the threshold question of appellee's authority to seek appellants' removal as general partners. *See* Ark. Code Ann. § 16-108-209 (1987). If so, the arbitrators shall set out their award in writing, as they are required to do. Ark. Code Ann. § 16-108-208(a) (1987). If not, they shall hear the issue as originally intended by the chancellor.

Appellants argue next that the chancellor's denial of their motion to vacate was in error because the arbitrators failed to follow the rules established by the American Arbitration Association (AAA) in that they (1) failed to grant a continuance reasonably requested by appellants, (2) failed to require the exchange of exhibits five days prior to the arbitration, (3) and failed to include appellants' appointed arbitrator (Mrs. Hart) in a post-arbitration conference. We, however, disagree with appellants. The chancellor refused to vacate the award on the first two grounds argued by appellants because: (1) appellants were fully aware of the grounds upon which appellee would rely for their removal; (2) appellants had the opportunity to engage in discovery while the case was in chancery court and thus had an opportunity to ask appellee for his evidence; (3) appellants waived their argument by failing to attend a preliminary hearing on May 4, 1999, during which exhibits could have been exchanged; (4) appellants did not provide their exhibits to appellee five days in advance; and (5) appellants did not proffer any evidence contradicting the exhibit evidence offered by appellee, nor did they deny the validity of appellee's exhibits. The chancellor rejected appellants' final argument by finding that Mrs. Hart was scheduled to participate in a conference call at 10:00 a.m. on May 13, but the operator could not reach her, despite several attempts. The other two arbitrators then reviewed the evidence and made a decision on the case. Shortly thereafter, Mrs. Hart appeared and

threatened one of the arbitrators. According to the chancellor, the tactics used by appellants made arbitration more difficult than normal, but there was no evidence that the arbitrators failed to follow the rules of the AAA.

██ An arbitration award may be vacated on the basis of the following grounds set out in Ark. Code Ann. § 16-108-212(a) (1987):

> (1) The award was procured by corruption, fraud, or other undue means;
>
> (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
>
> (3) The arbitrators exceeded their powers;
>
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of § 16-108-205, as to prejudice substantially the rights of a party; or
>
> (5) There was no arbitration agreement and the issue was not adversely determined in proceedings under § 16-108-202 and the party did not participate in the arbitration hearing without raising the objection.

Our review on appeal is limited to vacating an arbitration award only on statutory grounds, unless the award violates strong public policy. *See Anthony v. Kaplan*, 324 Ark. 52, 918 S.W.2d 174 (1996). The only applicable grounds in the above-quoted statute that correspond with appellants' allegations are contained in subsection (a)(2) — misconduct by an arbitrator prejudicing the rights of any party — and subsection (a)(4) — refusal to postpone a hearing upon sufficient cause being shown.

██ Neither this court nor the Arkansas Supreme Court has reviewed an arbitration award on the ground of procedural irregularities such as those alleged here. As a result, the standard for reviewing procedural irregularities in an arbitration hearing has not been established. However, if there is no case law on an arbitration issue, we may look to other states that have adopted the Uniform

Arbitration Act. *See Anthony v. Kaplan, supra.* The Alaska Supreme Court has held that the arbitrators' procedural decisions are entitled to a "deferential review" and that a litigant should be required to show "gross error" to obtain reversal on a procedural ground. *See Ebasco Constructors, Inc. v. Ahtna, Inc.*, 932 P.2d 1312 (Alaska 1997). While we do not necessarily adopt the "gross error" rule, we agree that an arbitrator's procedural decisions are entitled to deference. In light of that, we cannot say that the chancellor erred in refusing to vacate the award in this case. The well-considered reasons set forth by the chancellor for refusing to vacate the award are sound and are supported by the evidence. Therefore, we find no error on this point and affirm.

The remaining issues concern the chancellor's decision to hold appellants in contempt. In the June 28, 1999 order confirming the arbitration award, the chancellor ordered appellants to deliver all the limited partnership's assets to the receiver and "enjoined and restrained [them] ... from interfering with the Receiver...." By that same order, the chancellor directed the receiver to "file an application with the FCC to transfer control of Vinewood Communications to [the successor general partner]...." Appellants, however, filed an objection with the FCC to the transfer of control of the limited partnership to the receiver. The chancellor found this act contemptuous and, as appellants' punishment, awarded appellee a $7,118.90 judgment representing the full costs of arbitration. He also awarded an undetermined amount to appellee for attorney's fees and losses occasioned by the contempt. Appellants argue that the finding of contempt was in error and, alternatively, that the punishment was erroneous. We address each issue respectively.

██ ██ " 'Civil contempt' is defined as that which exists in failing to do something ordered to be done by a court in civil action or is a violation of a court order resulting in a proceeding for the benefit of an aggrieved party." 17 C.J.S. *Contempt* § 9 (1999). Appellants argue that they were, as citizens, free to file objections with the FCC pursuant to 47 U.S.C. § 309 (1995), and, pursuant to the supremacy clause, the finding of civil contempt must be reversed. We disagree. Appellants provide no authority supporting their argument that this federal statute provides immunity from an order of a court that presides over a case in which they are a party. In this case, appellants were plainly ordered not to interfere with the

receiver, and despite that order, they purposefully interfered with the receiver's efforts to transfer control to the new general partner by filing an objection with the FCC. In light of these facts, we conclude that the chancellor's finding of contempt was not clearly erroneous and affirm.

 We do, however, modify the amount of the contempt award. Generally, "[t]he sanction of civil contempt serves two remedial purposes: to enforce compliance with an order of the court and to compensate for losses caused by noncompliance." 17 C.J.S. *Contempt* § 9 (1999). The $7,118.90 in arbitration costs awarded by the chancellor was in no way related to the contemptuous conduct in which appellants engaged. Thus, as a sanction, it did not serve the purpose of enforcing compliance with the chancellor's order or compensating appellee for appellants' violation of the order. Further, the partnership agreement had already mandated that each party pay one-half of any arbitration costs, and the arbitrators' award assessed those costs accordingly.

 Based upon the foregoing, we modify the chancellor's contempt award to delete the $7,118.90 in arbitration costs which, in effect, reinstates the arbitrators' division of costs. Appellants also challenge the chancellor's award of attorney fees as punishment for contempt. We do not address that issue because no attorney fee award had been made at the time this appeal was filed.

Affirmed in part as modified, reversed in part, and remanded.

PITTMAN and MEADS, JJ., agree.