Cite as 2020 Ark. App. 162

# ARKANSAS COURT OF APPEALS
### DIVISIONS III & IV
### No. CR-18-1021

| | |
|---|---|
| JESSE W. PETTRY<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** March 4, 2020<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72CR–18-1113]<br><br>HONORABLE MARK LINDSAY, JUDGE<br><br>SUBSTITUTED OPINION ON GRANT OF REHEARING<br><br>MOTION TO DISMISS APPEAL DENIED; REVERSED AND DISMISSED |

## BRANDON J. HARRISON, Judge

Jesse Pettry was convicted in circuit court of violating Ark. Code Ann. § 5-73-120(a) (Repl. 2016), which forbids a person from "carrying a weapon." Pettry had a handgun in his right front pocket when he was arrested one night in Fayetteville, Arkansas, after acting out at a bar and tearing a door off its hinges on his way out of the bar when told to leave. The statute specifically prohibits a person from "possess[ing] a handgun . . . on or about his or her person, in a vehicle occupied by him or her, or otherwise readily available for use *with a purpose* to attempt to *unlawfully employ* the handgun . . . *as a weapon* against a person." *Id.* (emphasis added). Pettry was first convicted under this statute in district court. He appealed to circuit court. Sitting as the factfinder by agreement of the parties and given

a set of stipulated facts, the circuit court also convicted Pettry of violating section 5-73-120(a). Pettry appeals again.

The State moved this court to dismiss Pettry's appeal before all the briefing was completed. The motion argued that Pettry had not properly followed Ark. R. Crim. P. 36 (2019), which dictates how a defendant initiates a de novo proceeding in circuit court after incurring an adverse judgment in district court. We held the motion until the case was submitted for a decision. In due course, this court (acting through a three-judge panel) granted the State's motion and dismissed Pettry's appeal on jurisdictional grounds. The merit of the circuit court's conviction was not reached given our holding that the circuit court never acquired jurisdiction, which in turn meant that this court did not have jurisdiction to review the circuit court's decision. *Pettry v. State*, 2019 Ark. App. 457, 588 S.W.3d 71. After the dismissal of his appeal, Pettry filed a petition for rehearing. Ark. Sup. Ct. R. 2-3 (2019).

In his petition, Pettry argued that "the plain language of Rule 36(c) vests the circuit court with jurisdiction 'upon the filing of the certified record in the office of the circuit clerk.'" Pettry says that he timely filed the certified record in circuit court, so the State's motion should have been denied, not granted. Having reconsidered the issue, we agree with Pettry. The petition for rehearing is therefore granted, and this substituted opinion replaces *Pettry v. State*, 2019 Ark. App. 457, 588 S.W.3d 71. We now deny the State's motion to dismiss. And regarding this appeal's merit, we agree with Pettry that the State did not sufficiently prove its case against him in circuit court. Therefore, the 3 August 2018 sentencing order is reversed and the case dismissed.

I. *The Circuit Court Acquired Jurisdiction Over the Appeal from District Court*

In its motion to dismiss, the State argued that Ark. R. Crim. P. 36(c) required Pettry to do three things before the circuit court could acquire jurisdiction over his de novo appeal from district court. The State argued that

- Pettry had to, but did not, file a written request to prepare the record with the district court clerk;

- Pettry had to, but did not, serve the written request on the prosecuting attorney for the pertinent judicial district; and

- Pettry had to, but did not, file a certificate of that service with the district court clerk.

The State grounded its motion in this court's caselaw. But having reconsidered how one initiates a de novo proceeding in circuit court pursuant to Rule 36, we believe the rule requires us to change course. To that end, today we hold that none of the events the State relied on in its motion to dismiss have jurisdictional importance; the named events are administrative in nature, not jurisdictional.

Rule 36's plain words drive this conclusion. Here are its first three sections:

> (a) *Right to Appeal.* A person convicted of a criminal offense in a district court, including a person convicted upon a plea of guilty, may appeal the judgment of conviction to the circuit court for the judicial district in which the conviction occurred. The state shall have no right of appeal from a judgment of a district court.

> (b) *Time for Taking Appeal.* An appeal from a district court to the circuit court shall be filed in the office of the clerk of the circuit court having jurisdiction of the appeal within thirty (30) days from the date of the entry of the judgment in the district court. The 30-day period is not extended by the filing of a post-trial motion under Rule 33.3.

> (c) *How Taken. An appeal from a district court to circuit court shall be taken by filing with the clerk of the circuit court a certified record of the proceedings in the district court. Neither a notice of appeal nor an order granting an appeal shall be*

3

*required*.  The record of proceedings in the district court shall include, at a minimum, a copy of the district court docket sheet and any bond or other security filed by the defendant to guarantee the defendant's appearance before the circuit court.  It shall be the duty of the clerk of the district court to prepare and certify such record when the defendant files a written request to that effect with the clerk of the district court and pays any fees of the district court authorized by law therefor.  The defendant shall serve a copy of the written request on the prosecuting attorney for the judicial district and shall file a certificate of such service with the district court.  The defendant shall have the responsibility of filing the certified record in the office of the circuit clerk.  *Except as otherwise provided in subsection (d) of this rule, the circuit court shall acquire jurisdiction of the appeal upon the filing of the certified record in the office of the circuit clerk.*

Ark. R. Crim. P. 36(a)–(c) (emphasis added).

A circuit court acquires jurisdiction over a de novo appeal from district court when a certified record from the district court is timely filed in the circuit court.  "An appeal from a district court to circuit court shall be taken by filing with the clerk of the circuit court a certified record of the proceedings in the district court."  Ark. R. Crim. P. 36(c).  The rule repeats its core jurisdictional point at subsection (c)'s end:  "Except as otherwise provided in subsection (d) of this rule, the circuit court shall acquire jurisdiction of the appeal upon the filing of the certified record in the office of the circuit clerk."  *Id.*  On the timeliness of filing the district court record in circuit court, our supreme court has expressly held that Rule 36(b)'s thirty-day requirement is jurisdictional.  *Roberson v. State*, 2010 Ark. 433.  We have followed that rule and will continue to do so.  *See Wells v. State*, 2019 Ark. App. 451, 588 S.W.3d 99 (same); *Barker v. State*, 2017 Ark. App. 43, 510 S.W.3d 284 (same).  *But see* Ark. R. Crim. P. 36(d) (the so-called "affidavit option," which may be used to establish jurisdiction over a de novo proceeding in circuit court in certain circumstances); *Treat v. State*, 2019 Ark. 326, 588 S.W.3d 10 (addressing Rule 36(d)).

4

Here, no one disputes that Pettry filed a certified district court record in the circuit court within thirty days of "the date of the entry of the judgment in the district court." These facts defeat the State's motion. Our reasoning is explained more fully below.

1. *Filing the written request with the district clerk.* Pettry did not have to file a written request to certify the record of the district court proceedings with the district clerk to give the circuit court jurisdiction. Not only does Rule 36 state that "the circuit court shall acquire jurisdiction of the appeal upon the filing of the certified record in the office of the circuit clerk[,]" it expressly declares that "[n]either a notice of appeal nor an order granting an appeal shall be required." But this court's prior decisions have practically required the opposite by holding that a defendant who fails to file a written request to a district clerk for a certified record also fails to establish jurisdiction in the circuit court. *See, e.g.*, *Latham v. State*, 2019 Ark. App. 323, 578 S.W.3d 732. We now hold that Rule 36(c)'s written notice requirement has no jurisdictional significance. It simply identifies when a district clerk is tasked with preparing the record. Nothing more, nothing less. It seems contradictory to recognize that notices of appeal are not required, but then hold that written notices to district clerks must be filed before circuit courts acquire jurisdiction over de novo proceedings. We avoid interpreting rules in a way that creates internal contradictions.

"It shall be the duty of the clerk of the district court to prepare and certify such record when the defendant files a written request to that effect with the clerk of the district court and pays any fees of the district court authorized by law therefor." Ark. R. Crim. P. 36(c). According to subsection (c), the district clerk arguably has no obligation to certify the record and make it available to a defendant until the clerk receives the designated paper

5

and any applicable fee from the defendant. But Pettry received the record from the district clerk; then he timely filed it with the circuit clerk. That is all that he had to do to commence his de novo proceeding in circuit court. Whether the district clerk should have made the record available to Pettry in the first place is not at issue in this case. We also need not and do not decide whether a party could satisfy Ark. R. Crim. P. 36(d) (the affidavit option) unless and until all the steps the State argues for in its motion to dismiss have been completed.

Another reason why filing a written notice with the district clerk is administrative, not jurisdictional, is because the State cannot appeal an adverse district court ruling. "The state shall have no right of appeal from a judgment of a district court." Ark. R. Crim. P. 36(a). "No right of appeal" means no direct appeal and no cross-appeal. The point here is that whether the written notice is filed with the district clerk or not, the State's interests (whatever they may be) are unaffected. And if the issue is one of notice, the State gets that from the *circuit clerk* when a defendant initiates a de novo proceeding in circuit court. "When the record of the proceeding in the district court is filed in the office of the circuit clerk, the circuit clerk shall promptly give written notice thereof to the prosecuting attorney and to the circuit judge to whom the appeal is assigned." Ark. R. Crim. P. 36(f). This touches on another argument the State made in its motion.

2. *Certificate of service.* The State argues that Pettry filed a certificate of service in the circuit court rather than in the district court, and that oversight has a fatal jurisdictional consequence. We respectfully disagree. Pettry did not have to serve a copy of the written request on the prosecuting attorney and file a copy of it with the district clerk to give the

6

circuit court jurisdiction. The State will, as we just said, be notified by the circuit clerk when a criminal defendant initiates a de novo proceeding in circuit court. Ark. R. Crim. P. 36(f). And to the extent it makes a difference, the record reveals that Pettry's self-titled notice of appeal was hand delivered to the prosecutor. The State therefore received actual notice that Pettry intended to challenge his conviction in circuit court. Actual notice = No prejudice.

Furthermore, no case of which we are aware has ever held that the failure to file a certificate of service with a court clerk is a jurisdictional defect. The contrary proposition is already included in a rule of appellate procedure. Arkansas Rule of Appellate Procedure—Civil 3(f) states that failing to serve a notice of appeal "shall not" adversely affect an appeal:

> *Service of notice of appeal or cross-appeal.* A copy of the notice of appeal or cross-appeal shall be served by counsel for appellant or cross-appellant upon counsel for all other parties by any form of mail which requires a signed receipt. If a party is not represented by counsel, notice shall be mailed to such party at his last known address. *Failure to serve notice shall not affect the validity of the appeal.*

Ark. R. App. P.–Civ. 3(f) (2019) (emphasis added).

If failing to serve a (mandatory) notice of appeal in a civil case cannot affect the validity of an appeal, why should the failure to file a certificate of service with a district clerk thwart a criminal defendant's de novo proceeding in the circuit court? To ask the question is to answer it.

We also point out that the Arkansas Supreme Court has, to some degree, moved away from hyper-technical rules that arguably restrict access to the courts and deny parties decisions on the merits of their legal disputes. Rule 3(f) of the rules of appellate procedure

7

(civil) is a good example, as we just noted. Add to that Rule 3(e), which addresses the content that a notice of appeal must contain to pass muster. Now, whether a notice of appeal contains what it must is judged by a substantial-compliance standard rather than a strict-compliance standard. Ark. R. App. P.–Civ. 3(e); *see Emis v. Emis*, 2017 Ark. 52, at 4, 508 S.W.3d 886, 888 (applying a substantial-compliance standard rather than a strict-compliance standard and allowing appeal to proceed when document was timely filed and "because there was no prejudice to the appellee[.]").

Another example of the supreme court relaxing the rules of procedure to facilitate access to the courts is the recently revised Arkansas Rule of Civil Procedure 4. It now also rejects a former strict-compliance standard when serving legal process to commence a suit in favor of a substantial-compliance standard, albeit on a key condition. *See* Ark. R. Civ. P. 4(k) (effective 1 January 2019).[1]

What prejudice can the State claim when a defendant fails to file a certificate of service given that the circuit clerk must, under Rule 36(f), notify the State of any appeal to the circuit court? More to the point, how can a certificate-of-service issue be jurisdictionally important? It cannot be. We are not countenancing, much less advocating for, lax readings and applications of the rules of criminal procedure. Far from it. Our point is only that not every step or command in a rule of procedure establishes a jurisdictional event.

---

[1](k) *Disregard of Error; Actual Notice.* Any error as to the sufficiency of process or the sufficiency of service of process shall be disregarded if the court determines that the serving party substantially complied with the provisions of this rule and that the defendant received actual notice of the complaint and filed a timely answer.

3. *Stare decisis*. Because we are jettisoning some prior caselaw in the Rule 36 arena, a few words on following precedent are warranted. Stare decisis must be respected. But it is not an immutable law of nature. When convincing reasons show that following precedent continues to put courts (and the parties they serve) on a path opposite a workable and simple rule that increases access to a proceeding in a court of record rather than decreases it, then a change should be made. *Montejo v. Louisiana*, 556 U.S. 778, 792–93 (2009) ("Beyond workability, the relevant factors in deciding whether to adhere to the principle of stare decisis include the antiquity of the precedent, the reliance interests at stake, and of course whether the decision was well reasoned."); *Cochran v. Bentley*, 369 Ark. 159, 174, 251 S.W.3d 253, 265 (2007) ("Precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable.").

The most important point to make here is that no Arkansas Supreme Court case squarely prevents this court from holding, as it does today, that a timely filed certified district court record perfects a de novo appeal to a circuit court. As for this court's Rule 36 decisions, they have been well intentioned. But they have also sown issues of first impression, confusion, a recent split decision reviewed and reversed by the supreme court, apologies for harsh results, and ultimately, unnecessary dead ends for criminal defendants who merely sought a decision in a court of record.

Our Rule 36 cases that have wrestled with jurisdictional questions are also relatively new. Going in a different direction now would not unsettle important laws or reliance interests that are long in the tooth.

Finally, today's reconsidered application of Rule 36(c) acknowledges more acutely the substantial interests that criminal defendants possess—like rights to certain federal and state constitutional and statutory protections. The State, however, has no significant interest or substantive right at stake—not in the manner or degree that a criminal defendant does when moving from a district court to a circuit court. The State cannot appeal an adverse district court judgment. But it will get a full and fair hearing in circuit court should a defendant go there from district court.

To be as transparent and helpful as possible to the bench and bar, we have identified the following cases as ones that have applied an interpretation of Rule 36 that conflicts in one or more ways with this case's holdings. Consequently, they are expressly overruled on the issue of how a circuit court acquires jurisdiction over a de novo appeal from district court:

- *Pettry v. State*, 2019 Ark. App. 457, 588 S.W.3d 71 (dismissing appeal because record request and certificate of service was not filed in the district court).

- *Latham v. State*, 2019 Ark. App. 323, 578 S.W.3d 732 (dismissing appeal because the record contained no written request of a certified copy of the record, no payment of fees, and no indication that the prosecuting attorney was served with notice of the record request).

- *Bey v. State*; 2019 Ark. App. 35 (affirming dismissal of no-merit appeal in part because pro se defendant had not filed a certificate of service with the district court).

- *Dover v. State*, 2019 Ark. App. 260 (no proof the defendant made a written request to the district clerk for the record, served that request on the prosecuting attorney, or filed proof of service of the request with the district court clerk).

- *Jones v. State*, 2018 Ark. App. 211 (affirming the dismissal because Jones failed to file a written request with the district court clerk to prepare and certify the record; he failed to serve a copy of that request on the prosecuting attorney; and he failed to file a certificate of service with the district court).

• *Fewell v. State*, 2014 Ark. App. 631 (result of defendant's verbal (not written) request to district court clerk for record was that appellate court lacked jurisdiction).

II. *The State Did Not Sufficiently Prove That Pettry Unlawfully Carried a Weapon*

Turning to the circuit court case that followed Pettry's timely appeal from the district court, we first note its atypical route. Both parties agreed to submit the case to the circuit court for decision on stipulated facts—the bulk of which are the arresting officers' notes. No witness testimony was presented to the circuit court. No deposition testimony was presented. Given the importance of this case, which concerns when possessing (or "employing") a gun may be criminalized, we have reproduced in full below the stipulated facts on which the circuit court convicted Pettry.

*[Officer J. Harris #378 Case Narrative]*

On October 28, 2017, at approximately 11:50 PM, I was patrolling the area of Dickson St. with Officer Hilliard #391. We were contacted by Central Dispatch Center to respond to You Know Uno for a criminal mischief call. The call said the suspect, later identified as Jesse Pettry (06/06/1985) was told to leave the bar due to his level of intoxication. Mr. Pettry become upset and tore the door off of the hinges on the south side of the bar.

The caller followed Mr. Pettry from the bar, going through the rear entrance of Stir, exiting out the front, and continued to follow him to the intersection of Dickson and West. The caller indicated that Mr. Pettry began to run from him, and they ran alongside the Bank of Fayetteville bank train. Officer Hilliard and I noticed Mr. Pettry running south and then heading towards Arsaga's at 548 W Dickson St. I made contact with Mr. Pettry in front of Arsaga's and told him to talk to me in front of my patrol vehicle.

I noted Mr. Pettry's eyes were bloodshot and watery, he had the odor of intoxicants emitting from his breath and body, and he seemed unsteady on his feet. He approached and began to move his hands towards his side. I asked if he had any weapons, and he said he had a pistol. At that time, Officer Hilliard, who was standing behind Mr. Pettry, was quickly able to remove the pistol from Mr. Pettry's front right pocket.

11

I placed Mr. Pettry under arrest for Public Intoxication and Disorderly Conduct and placed him in the back seat of my patrol vehicle. I asked him several times what his name was, if he had any ID, and where he was coming from; however, he refused to answer. While en route to the Washington County Detention Center, Dispatch advised that he had a parking summons and I began to speak with him in reference to the parking summons. I asked him several questions as to if the address was correct or what his phone number was, but he refused to answer. At that time, officer Hilliard advised that Mr. Pettry was passed out in the back seat. Once arriving at the Washington County Detention Center, Mr. Pettry was released to jail staff for booking.

*[Officer Notes of J. Hilliard #391]*

On October 28, 2017, at approximately 11:50 PM, I was patrolling the area of Dickson St with Officer Harris #378 when we were dispatched to You Know Uno for a criminal mischief. Central Dispatch Center advised the caller reported the suspect, later identified as Jesse Pettry, was told to leave the bar due to his level of intoxication. Pettry became upset and tore the door off of the hinges, damaging the frame.

The caller followed Pettry from the bar towards the Bank of Fayetteville Train Bank on Dickson St and Pettry began to run. Dispatch gave a description of a white male wearing an American flag jacket. I observed Pettry run from behind the Bank of Fayetteville Train Bank, heading northbound towards the Arsaga's parking lot. Pettry appeared to be running from the caller.

I activated my emergency lights in an attempt to have Pettry stop. I was able to cut Pettry off in the Arsaga's parking lot. As I exited the vehicle, Pettry was walking towards Officer Harris. Officer Harris asked if Pettry had any weapons on him, as it appeared Pettry began to raise his hands and slowly lower them. Pettry advised Officer Harris that he did have a pistol on him. I observed a magazine that appeared to be inserted into a Glock handgun slightly protruding from Pettry's right pants pocket. I removed the handgun from Pettry's pocket as Officer Harris placed Pettry in handcuffs. I observed Pettry to have red and watery eyes, slurred speech, an odor of intoxicants on his breath, and he was unsteady on his feet.

I cleared the Glock 43 .9mm handgun that contained one magazine with one round in the chamber. I secured the weapon in my patrol vehicle and began assisting Officer Harris with the identification of Pettry. Officer Harris removed Pettry's wallet and handed it to me. I removed Pettry's driver's license and checked for a concealed carry license, which I was unable

to locate. When I ran Pettry though Central Dispatch Center, he did not return with a concealed carry license. Pettry was secured in my patrol vehicle.

While officers were discussing charges, I overheard a tapping or banging sound near my patrol vehicle. When I checked on Pettry, I observed him to be calmly sitting in the patrol vehicle. I heard the banging continue, so I walked around to the passenger side of my patrol vehicle, where I observed a white female subject with the rear passenger door open where Pettry was located. As I moved the subject around from my patrol vehicle, Pettry began yelling to her to count his money and that officers were stealing it. Pettry claimed to have $1500 in his wallet.

I then transported Pettry to the Washington County Detention Center for further booking and processing. Upon arrival, Pettry was turned over to jail staff. Prior to leaving the Washington County Detention Center, I issued a citation to Pettry for an active parking summons he had. Upon returning to the Fayetteville Police Department, the firearm was submitted to Evidence.

*[Officer White #353 Case Supplement]*

On October 28, 2017, at approximately 23:50, I responded to Arsaga's to assist Officer Harris #378 with a criminal mischief report. When I arrived, I observed Officer Harris arresting a white male identified as Jesse Pettry in the parking lot.

I was approached by Jeremy Rhodes (07/13/1989), who stated that Pettry had broken a door at You Know Uno before leaving. Rhodes had followed Pettry to this location while calling the Fayetteville Police Department. He said the male grabbed the door and pulled it off of the frame before leaving the establishment. Rhodes said it would cost less than $300 to fix the door and asked that Pettry be trespassed from the location.

The parties further stipulated that "the alleged firearm in this matter . . . is in fact a firearm" and that any objections to the admission of the "case narrative," "case supplement," and the "Fayetteville District Court Preliminary Report and Information Form" are waived "for purposes of the trial."

The parties also filed what are essentially trial briefs with the circuit court. Pettry's brief asked the court to dismiss the weapon charge and find him not guilty because the facts

13

did not support a conviction for violating Ark. Code Ann. § 5-73-120. As he put it, "The State has not only the burden of proving beyond a reasonable doubt that the handgun was carried as a weapon against a person, but also that the purpose of carrying that handgun was to attempt to employ it unlawfully." Pettry further argued that he did not "remove, display, or otherwise brandish the firearm" and that he was not charged with fleeing and fully cooperated and complied with the police officers' requests. The State argued that because Pettry's firearm was loaded "and because he moved his hand to his side after fleeing from officers, his purpose to unlawfully attempt to use the handgun against a person is apparent. . . . Nothing in the facts clearly rebuts the long-held presumption that his concealed, loaded firearm was intended to be used as a weapon."

The circuit court issued a letter opinion a few days later and found the following:

• At the time of the arrest, Pettry was carrying a loaded Glock pistol in his right front pocket.

• Pettry "moved his hands toward the pistol and then down, but did admit that he had a pistol on his person."

• Pettry "was not, at the time of his arrest, on a journey."

• There is a legal presumption that "when a person carries a concealed pistol it is presumed that it was loaded and worn as a weapon, but the presumption may be rebutted." *Thompson v. City of Little Rock*, 194 Ark. 78 (1937).[2]

_____

[2]We acknowledge the circuit court's use of the presumption that "when a person carries a concealed pistol it is presumed that it was loaded and worn as a weapon." This presumption gives us pause because it arguably relieves the State of proving every element of a statutory crime in the first instance. Moreover, the Arkansas Supreme Court case on which the circuit court relied when applying the presumption was about a violation of a city ordinance. The statute at issue in this appeal was not involved in that case. Finally, the State does not press the presumption on appeal, and it is not a part of the statute of conviction. Consequently, we see no need to address the presumption's validity or application in this case.

14

- Pettry failed to provide any evidence to rebut "the presumption that the pistol was carried as a weapon."

- Pettry was guilty of violating Ark. Code Ann. § 5-73-120.

A sentencing order reflecting the letter opinion's ultimate conclusion followed shortly after the letter opinion's entry. Pettry timely appealed the sentencing order, arguing that the stipulated facts cannot support a conviction.

Before we discuss the conviction, we address an objection the State made in its appellee's brief. It contends that Pettry did not preserve a challenge to the sufficiency of the evidence against him. The State reasoned that Pettry failed to move to dismiss the charge under Arkansas Rule of Criminal Procedure 33.1(b); therefore, he is procedurally barred from challenging the conviction. We disagree. First, the State did not object to submitting the case on stipulated facts. That is not the usual course in criminal cases, but the parties agreed to do it, and the circuit court permitted them to do so. Second, Pettry filed a motion to dismiss in the circuit court before it issued the letter opinion and before it entered the sentencing order. Finally, the essential purpose of Rule 33.1—that the State may shore up weak elements while the trial is still underway—is not squarely implicated in this case because the State agreed to submit it on stipulated facts. *See Brown v. State*, 316 Ark. 724, 726, 875 S.W.2d 828, 830 (1994) ("The reasoning underlying our holdings is that when specific grounds are stated and the absent proof is pinpointed, the trial court can either grant the motion, or, if justice requires, allow the State to reopen its case and supply the missing proof."). Therefore, we hold that Pettry preserved a challenge to the sufficiency of the evidence.

15

The merits. Pettry primarily argues here that the State "offered nothing to show criminal intent to use the handgun against a person." The State reiterates that Pettry "reached for his gun when he was confronted by police after fleeing the scene of a crime he committed," and that act "demonstrate[s] that he had the requisite criminal intent."

To sustain a conviction for the offense of carrying a weapon, the State must prove that Pettry "possess[ed] a handgun . . . on or about his or her person, in a vehicle occupied by him or her, or otherwise readily available for use *with a purpose* to attempt to *unlawfully employ* the handgun . . . *as a weapon* against a person." Ark. Code Ann. § 5-73-120(a). The State failed to present substantial evidence that Pettry possessed the gun with the purpose to unlawfully employ it against a person.

To briefly summarize the police narratives, Pettry agreed that he tore the door off the hinges in a Dickson Street bar shortly before midnight on 28 October 2017. The person who called the police ran after Pettry after he left the bar. Police officers responding to the call saw Pettry running down the street and ordered him to stop. He stopped. He seemed intoxicated and unsteady on his feet. "[Pettry] approached and began to move his hands towards his side." The police officer asked him if he had a weapon, and Pettry said he had a pistol, which was removed from Pettry's right front pocket, without incident, as he was arrested for public intoxication and disorderly conduct.

Having reviewed the entire record before us in the light most favorable to the State, there is insufficient proof that Pettry "possess[ed] a handgun . . . on or about his or her person . . . for use with a purpose to attempt to unlawfully employ the handgun . . . as a weapon against a person." Ark. Code Ann. § 5-73-120(a). The evidence shows that before

16

law enforcement engaged him, Pettry did not brandish his gun to anyone. Pettry did not announce to anyone that he possessed a gun, much less that he intended to use it in some unlawful manner. True, he acted violently toward a business's property; but he never verbally or physically threatened any person (as far as the record reveals) with the firearm that he possessed. And no one thought to inform the police officers (as far as the record reveals) that he had threatened any person with a gun and might have one on his person. For these reasons, we cannot agree that the stipulated facts substantially establish that Pettry acted as someone who might purposely employ a handgun as a weapon in an unlawful manner against a person.

As to the police officers' direct engagement with Pettry, that encounter does not supply substantial evidence for the conviction either. The charge makes sense only if the State maintains that Pettry intended to use the gun against a police officer (when he was confronted by them after he fled the bar) or someone else (who is never identified in the record). The police officers, according to their own narratives, did not see the need in the moment to use any force against Pettry to protect themselves or bystanders, for example. Nor do the narratives reflect that Pettry resisted arrest in a manner that might have escalated the initial encounter. The stipulated facts establish the opposite: an intoxicated Pettry complied with police demands in a nonthreatening manner, entered the patrol car without incident, and eventually passed out inside the patrol car without further incident and under the officers' watchful eyes. To hold that substantial evidence was presented to support the "carrying a weapon" charge in this case would arguably be tantamount to a conclusion that

17

carrying a concealed handgun without a concealed-carry license *necessarily violates* Ark. Code Ann. § 5-73-120(a) and thereby exposes a citizen to a conviction for a Class A misdemeanor.

But a statute imposing criminal liability on a person for merely possessing a concealed firearm without a license to carry one in a concealed manner is not the statute before us. The statute of conviction in this case is not of the strict-liability variety. Instead, it requires the State to prove that Pettry possessed a gun with the *purpose* of using it for an *unlawful* end. In Arkansas's criminal law, "purpose" is defined this way: "A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result[.]" Ark. Code Ann. § 5-2-202(1) (Repl. 2013). The State did not sufficiently establish the purpose element. Nor did it sufficiently establish that Pettry did, or was about to, "employ" the gun in his pocket in an "unlawful" manner against a person. *See generally Taff v. State*, 2018 Ark. App. 488, at 9, 562 S.W.3d 877, 882 ("Merely possessing a [gun] is not a crime in the State of Arkansas.").

## III. *Conclusion*

Jesse Pettry timely and properly appealed his conviction from the district court to the circuit court. The State's motion to dismiss is therefore denied. Having properly acquired jurisdiction over Pettry's case, the circuit court erred when it convicted him of violating section 5-73-120, a Class A misdemeanor, because the State did not sufficiently prove all the statute's elements.

Motion to dismiss appeal denied; reversed and dismissed.

GRUBER, C.J., and VAUGHT, J., agree.

18

VIRDEN, J., concurs.

SWITZER and MURPHY, JJ., dissent.

**BART F. VIRDEN, Judge, concurring**. Our holding today may seem like an abrupt course reversal, and to an extent it is. Until now, we have treated all the requirements of Rule 36 as jurisdictional and mandatory, and for good reason. We have held that

> the provisions of the predecessor to Rule 36, District Court Rule 9, are jurisdictional and not procedural. In *Velek v. State (City of Little Rock)*, 364 Ark. 531, 535, 222 S.W.3d 182, 185 (2006), our supreme court held that

>> [i]t is true that the District Court Rules are mandatory and jurisdictional, and that failure to comply with those rules mandates dismissal of an appeal. *See J & M Mobile Homes, Inc. v. Hampton*, 347 Ark. 126, 60 S.W.3d 481 (2001) (requiring strict compliance with Rule 9); *Pike Avenue Dev. Co. v. Pulaski Cty*, 343 Ark. 338, 37 S.W.3d 177 (2001); *Pace v. Castleberry*, 68 Ark. App. 342, 7 S.W.3d 347 (1999) (Rule 9's thirty-day limit for filing an appeal is both mandatory and jurisdictional, and the failure to either file the record with the clerk or file an affidavit showing the record has been requested from the clerk within those thirty days precludes the circuit court from having jurisdiction over the appeal).

*Jones v. State*, 2018 Ark. App. 211, at 5.

Recently, however, our supreme court has held that not all the steps set forth in Rule 36 are jurisdictional. *Treat v. State*, 2019 Ark. 326, 588 S.W.3d 10. The facts in *Treat* are not entirely the same as in the instant case; however, the court's reasoning in *Treat* has changed our understanding of the application of Rule 36 and which actions and events "trigger" jurisdiction. *Id.* at 9. Though Treat did not follow every single instruction set forth in Rule 36(c), the Supreme Court held that Treat sufficiently followed Rule 36 to attain jurisdiction in the circuit court. Applying the Supreme Court's reasoning in *Treat* to the instant case, it is clear that jurisdiction was triggered. I concur to acknowledge that *Treat* is the starting point for a revised interpretation of Rule 36.

19

**MEREDITH B. SWITZER, Judge, dissenting**.   Today the majority performs an about-face regarding the procedure for perfecting an appeal from district court to circuit court. While I appreciate a desire to clarify Rule 36 and simplify the procedure for perfecting appeals from district court, I disagree that the Arkansas Supreme Court's decision in *Treat v. State*, 2019 Ark. 326, 588 S.W.3d 10, grants quite the wide berth our court has taken in distinguishing administrative from jurisdictional requirements within the rule.   I remain convinced the requirements of Rule 36(c) are jurisdictional, and because Pettry did not comply with these requirements, I would dismiss the appeal for lack of jurisdiction.   For the reasons set forth herein, I respectfully dissent.

To begin, I dispute that *Treat* stands for the general proposition that not all "steps" set forth in Rule 36(c) are jurisdictional.   I read *Treat* more specifically to mean that the "steps" set forth in *subsection (c)* are not mandatory, and thus jurisdictional, when a defendant attempts to perfect an appeal pursuant to *subsection (d)*.   The majority goes further by interpreting *Treat* to mean that the "steps" in (c) are not jurisdictional even when the defendant proceeds to perfect an appeal under subsection (c).   The majority's reading of *Treat* and its subsequent holding herein renders mandatory "shall" language throughout Rule 36(c) meaningless, contrary to our well-established case law that when we construe a court rule, we employ the same rules of construction used to interpret statutes—we construe it just as it reads and give the words their ordinary and usually accepted meaning in common language. *Washington Reg'l Med. Ctr. v. NW. Physicians, LLC*, 2018 Ark. App. 497, 562 S.W.3d 239.   Our court has consistently held that "shall" language denotes mandatory compliance unless it would lead to an absurd result. *Vaughn v. Mercy Clinic Fort Smith*

*Communities*, 2019 Ark. 329, 587 S.W.3d 216.  Rule 36(c) contains the following

"requirements":

   (1) An appeal from a district court *shall* be taken by filing with the clerk of the circuit court a certified record of the proceedings in the district court.

   (2) The record of proceedings in the district court *shall* include, at a minimum, a copy of the district court docket sheet and any bond or other security filed by the defendant to guarantee the defendant's appearance before the circuit court.

   (3) It *shall* be the duty of the clerk of the district court to prepare and certify such record when the defendant files a written request to that effect with the clerk of the district court and pays any fees of the district court authorized by law therefor.

   (4) The defendant *shall* serve a copy of the written request on the prosecuting attorney for the judicial district and *shall* file a copy of the written request on the prosecuting attorney for the judicial district and *shall* file a certificate of such service with the district court.

   (5) The defendant *shall* have the responsibility of filing the certified record in the office of the circuit clerk.

   (6) Except as otherwise provided in subsection (d) of this rule, the circuit court *shall* acquire jurisdiction of the appeal upon the filing of the certified record in the office of the circuit clerk.

(Emphasis added.)  These mandatory "requirements," however, have now been reduced to

"events" "steps" and "instructions"—in other words, suggestions.  Our case law does not

support such a result.  *Treat* does not demand such a result and, in fact, can be read quite

harmoniously with our court's initial opinion in this case.

The majority gives full effect to only the last sentence of Rule 36(c) and buttresses

its position in large part on this provision: "The circuit court shall acquire jurisdiction of

the appeal upon the filing of the certified record in the office of the circuit clerk."  This

language denotes the point in time at which the circuit court acquires jurisdiction, not the

sole basis upon which the circuit court acquires jurisdiction.  This interpretation is consistent

with *Treat*.  Rule 36(d), the operative subsection in *Treat*, includes similar language: "The

circuit court shall acquire jurisdiction of the appeal upon the filing of the affidavit."  The

supreme court did not dispose of any mandatory requirement contained in subsection (d); it held that the defendant must file a timely affidavit *and* serve the affidavit on the clerk of the district court and the prosecuting attorney. "Once these two things are satisfied, the Rule plainly states that '[t]he circuit court shall acquire jurisdiction of the appeal upon the filing of the affidavit.'" *Treat*, 2019 Ark. 326, at 8, 588 S.W.3d 10, 15. *Treat* did dispose of requirements found in another subsection, subsection (c), because Treat was not attempting to perfect his appeal pursuant to that subsection. He attempted to perfect his appeal pursuant to subsection (d). The mandatory requirements under subsection (c) are not mandatory if proceeding under subsection (d). Giving the words in Rule 36(c) their ordinary and usually accepted meaning in common language, however, those requirements should be and heretofore have been mandatory and jurisdictional for appealing under subsection (c), as Pettry attempted to do here. What reason would there possibly be to treat one subsection's requirements as jurisdictional but not the other subsection's requirements? I submit that there is not one. Herein lies one of many examples of the inconsistency and confusion that will likely result from today's ruling.

Like the majority, I favor procedural rules that are clear and endeavor to interpret a rule accordingly, when appropriate. The majority cites numerous cases this court has decided in the recent past that demonstrate Rule 36 is ripe for revision. I submit, though, that there is an established process for revising the rules of procedure. As noted by the majority, our supreme court has already, in some instances, moved away from hypertechnical rules that arguably restrict access to the courts by revising the rules to accommodate a substantial-compliance standard rather than a strict-compliance standard.

Our supreme court has not, however, done the same with Rule 36. Attempting to simplify Rule 36 by gutting its language and drastically reversing course in this one opinion only stands to enflame what is already a hotbed of confusion and friction between litigants, practitioners, and clerks over who is responsible for what and when in perfecting a district court appeal.

For these reasons, I dissent.

MURPHY, J., joins.

*Peter E. Giardino*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.