ARKANSAS DEPARTMENT OF HUMAN SERVICES
v. Donnie Ray SHIPMAN

CA 87-449                                   756 S.W.2d 930
Court of Appeals of Arkansas
Division I
Opinion delivered September 21, 1988

248

*Debby Thetford Nye*, General Counsel, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

GEORGE K. CRACRAFT, Judge. In 1971, Donna Shipman, then less than a year old, was placed in foster care by order of the juvenile court of Perry County. In late 1986, she had moved into the home of Edwin and Jerreld Boudra, who had been social workers at the orphanage in which she had originally resided but had never been appointed her guardians or custodians. In March of 1987, Donna requested that she be permitted to reside permanently in the home of a sister in Chicago, Illinois. The Arkansas Department of Human Services (Department) was requested by the Boudras to assist them in obtaining the necessary order to comply with her request. The petition was filed by the Department in the Probate Court of Perry County to accomplish that purpose.

At a March 20, 1987, hearing on the petition it was agreed by the parties and the court that before a permanent change of residence was ordered the Department should provide round-trip transportation for the child for a summer visit of six weeks or less with the sister in Chicago to determine if her desire was genuine. It was determined that if after that time she still desired to live in Chicago a permanent order would be considered at a hearing to be held in August.

The trial court ordered that temporary custody be placed in the Boudras, that the Department provide the necessary transportation for the trip and request home studies of the minor's two sisters in Chicago from the appropriate agency in the State of Illinois, and that the child not be permitted to leave until a favorable report on the home of at least one sister was received. The court stated that the petition for a permanent change of

residence would be considered after the summer visit. The court further stated that, before the permanent change was effected, the Department should have obtained such necessary medical, dental, and orthodontic examinations, to enable the child to go to Chicago with her medical treatment and records completely up to date. A written order was prepared by the attorney for the Department and entered by the court on April 7, 1987, containing all those directives except a specific provision concerning the medical records at the time of any permanent transfer. The order merely provided that the Department should provide "Protective Services," a term the attorney understood to encompass any services the child might need and an order which would enable the Department to obtain the necessary funding for those services.

The minor went to Chicago on June 22 and returned on July 25, stating that she had changed her mind and wished to continue to reside in the home of the Boudras.

At a hearing held on August 21, 1987, the Department announced to the court the child's determination to remain in Arkansas and asked that the order directing Protective Services and naming the Boudras as the custodians of the child be continued. The court announced that it would hold a hearing to determine whether there had been compliance with its order of April 7. After a short hearing the court summarily adjudged two Department social workers and its attorney in criminal contempt and ordered them incarcerated in the county jail until they made specific monetary deposits with the clerk or sheriff. He indicated that he would, however, continue the custodial arrangement with the Boudras and the order that the agency furnish the child with the necessary Protective Services including necessary medical and dental services.

Although the court ordered the attorney for the Department to prepare a precedent for entry on those orders and present it to him by August 27, the court instead prepared and signed its own order holding the parties in contempt on August 26. It rejected the order submitted by the appellant's attorney, filed its order holding the Department employees in contempt on August 28, and entered its own order on the merits on September 4. Both orders of the court contained findings that the Department had failed to comply with the court's previous orders to obtain home

studies on both of the minor's sisters in the State of Illinois, and obtained a written report on only one of them. It found that the previous order failed to reflect its orders for medical, dental, and orthodontic examinations and that this failure resulted in neither medical nor orthodontic examinations being performed. It further found that the Department did not offer appropriate services to the minor. The three persons held in contempt were unaware that the separate order of contempt had been filed on August 28, and a notice of appeal from the order of September 4, 1987, was filed. The notice of appeal was on behalf of the Department and made no mention of the two social workers or the attorney or that they wished to appeal from an order holding them in contempt.

On appeal the Department contends that the recited findings contained in the order of September 4, are not supported by the evidence and are clearly erroneous. The only evidence in the record on the subject of home studies reflects that the Department did request, and obtain in writing, a favorable report on the home of one sister before the minor departed. Both social workers testified that they had requested additional home studies on both homes and had been verbally informed by the Illinois agency that the conditions in both homes were favorable for the visitation. They testified that, although they indicated that both home studies were urgently needed, they were informed that due to the Illinois agency's heavy work load a written report could not be transmitted for four or five months but that one would follow. There was no competent evidence that would support a finding that the failure to obtain the written reports on both homes was due to any fault or neglect on the part of the social workers. Rather, it is clear that the only finding the evidence would support is that the failure was due solely to the inability of the corresponding agency in Illinois to complete the work requested by the Department pursuant to the court's order.

Nor was there any evidence to support a finding that the medical and orthodontic examinations had not been performed. At the March hearing the court specifically directed that at the time the child permanently moved to Chicago her medical records should be up to date, including an orthodontic examination and such orthodontic treatment as may be found necessary. The child never moved to Chicago permanently. There was evidence that immediately upon returning from her summer visit

she was examined by her regular physician and treated by a dentist. The dentist performed some dental work, scheduled an appointment for additional work, and reported that the child was not a proper candidate for orthodontic treatment because her teeth did not contain enough "points." Her custodian testified that the Department had provided for all of the necessary medical and dental needs.

While we agree that the trial court's findings as to any alleged failure by the Department in the performance of its duties are wholly unsupported by any competent evidence, the error does not warrant reversal. The Department petitioned the probate court to appoint the Boudras as the continuing custodians of the child and to continue its order that the Department provide the child with Protective Services. The court entered just such an order. We find no prejudice that resulted from the erroneous findings by the court.

The two Department social workers and its attorney contend that the evidence as recited herein is insufficient to sustain a finding that they acted in such a manner as to undermine the dignity, integrity, or public respect for the courts, or warrant an adjudication of criminal contempt. They argue that in any event the summary manner in which the court made the adjudication was in total disregard of both statutory and judicial declarations that persons accused of criminal contempt committed outside the court's view must be first notified by a writing, sufficiently definite to inform them to a reasonable degree of certainty of the charge against them, and then be afforded a reasonable time and opportunity to prepare and defend themselves against the charge. Ark. Code Ann. § 16-10-108(c) (1987) (formerly Ark. Stat. Ann. § 34-903 (Repl. 1962)); *Edwards* v. *Jameson*, 283 Ark. 395, 677 S.W.2d 482 (1984). They argue that the trial court's total disregard of these rules and basic concepts of justice and fair play deprived them of due process of law and an opportunity to present a defense.

While we agree that the action of the trial court was inexcusable and could not withstand appellate review, we reluctantly must conclude that the propriety of that action is not properly before us for review. The notice of appeal filed in this case stated that the Department of Human Services appealed

from the court's order entered on September 4, 1987. It made no reference to the two social workers or attorney or that they were taking an appeal from the August 28 order holding them in contempt.

For over a century the proper manner for seeking review of contempt matters was by certiorari, because the statutes made no provision for appeals. In *Frolic Footwear, Inc.* v. *State*, 284 Ark. 487, 683 S.W.2d 611 (1985), the supreme court recognized that this was an anomaly since Rule 3 of the Arkansas Rules of Appellate Procedure now provides that appeal is the proper mode for review of all judgments and orders. The court declared that in the future contempts would be reviewed as appeals but gave no guidance other than that "we . . . shall regard them as being governed by the statutes [and rules] pertaining to appeals." 284 Ark. at 490, 683 S.W.2d at 612-13. Rule 3 provides that appeals are to be taken by filing a notice of appeal which shall specify the party or parties taking the appeal and the order appealed from.

Although it is readily apparent that the employees of the Department intended to appeal from their convictions of criminal contempt, we have held that a notice of appeal must be judged by what it recites and not what it was intended to recite. *Garland* v. *Windsor Door*, 19 Ark. App. 284, 719 S.W.2d 714 (1986). It must state the parties appealing and the order appealed from with specificity, and persons not named as parties to the notice and orders not mentioned in it are not properly before the appellate court. It is now our settled rule that a contemnor, not a named party in the original proceeding but held in contempt of the court's orders, must file a notice of appeal in his own right, specifying that he is appealing from the order holding him in contempt. *Marsh* v. *Hoff*, 15 Ark. App. 272, 692 S.W.2d 270 (1984); *Williams* v. *Williams*, 12 Ark. App. 89, 671 S.W.2d 201 (1984).

Nor is there merit in the argument that the failure to file a proper notice should be excused because the accused parties were not aware that the trial court had entered its own order holding them in contempt on August 28. The rule of general application would require them to keep abreast of the filings in the case and hold them accountable for having failed to do so.

However, there are at least two exceptions to that rule applicable to notices of appeal. Rule 4(a) of the Arkansas Rules of Appellate Procedure provides that the trial court in any case may grant an extension up to an additional sixty days for filing the notice where there is a showing that the person desiring to appeal failed to receive notice of entry of the judgment. Rule 36.9 of the Arkansas Rules of Criminal Procedure allows the supreme court to grant an even longer extension in criminal cases "when a good reason for the omission is shown" within eighteen months of the commitment. The record does not disclose that application for extension of time was made under Ark. R. App. P. 4(a) or has yet been made under Ark. R. Crim. P. 36.9.

Affirmed.

CORBIN, C.J., and JENNINGS, J., agree.