Larry LILLY, Peggy Hendricks, and Steve Westerfield *v.* John C. EARL, Probate Judge

89-40                                            771 S.W.2d 277

Supreme Court of Arkansas
Opinion delivered June 5, 1989

*Tami Harlan,* Ass't Gen. Counsel, Dep't of Human Services, for appellant.

*Steve Clark,* Att'y Gen., by: *Theodore Holder,* Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. This is an appeal from criminal contempt citations levied by Probate Judge John C. Earl, the appellee, against the appellants, Larry Lilly, Peggy Hendricks, and Steve Westerfield. We reverse and dismiss because there was insufficient evidence to hold Lilly, Hendricks, and Westerfield in criminal contempt and because they were not accorded the fair trial safeguards to which criminal contempt defendants are entitled, such as notice of the charges against them.

Donna Shipman is one of seven siblings whose mother died and who were placed in the Southern Christian Children's Home in Morrilton by Perry County authorities in 1971. For most of the time prior to the first hearing in this case in 1987 Donna lived in the home of Mr. and Mrs. Boudra who had been social workers at the Southern Christian Children's Home.

The Department of Human Services (DHS) appeared by its attorney, Mr. Westerfield, before the probate court on March 20,

1987, to present a petition to change custody of Ms. Shipman from the Southern Christian Children's Home to Ms. Shipman's older sister, Debbie Lombardo, who lived in Chicago. Ms. Shipman was then 17 years old and a junior at Morrilton High School. Although no witnesses were sworn, a recorded discussion was held among the court, Mr. Westerfield, Mr. Boudra, Ms. Shipman, and an unnamed "gentleman in the audience" who stated he was a social worker from the Southern Christian Children's Home. The only portion of the discussion abstracted is the judge's remarks made toward the end of the hearing:

> I am going to put this child in your [apparently Mr. and Mrs. Boudra's] custody and order Human Services to provide protective services for the child's specific medical and dental or orthodontic needs, and the future travel expenses for her to Chicago to visit with her nearest blood relatives. At this time I am not approving her moving from the State, pending the investigation of the sister's home in Chicago, and pending further hearing of this to see what you think is best to be done regarding her last year in school, and pending a hearing for Donna for what she thinks she wants to do for her last year in high school and, more particularly, why she wants to do whatever she wants to do. Get her up there and back. I think she wants to go up there and spend some time to see what she thinks about it, and if she gets up there and calls and, six weeks go by and she is tired of being up there, or they are not treating her right and she hadn't eaten in a week, then you bring her back down here, or be sure that I don't find out that you don't.

We note that the abstractor erroneously abstracted the court's remarks in one particular. The record shows the court approved the visit "pending investigation of the sisters' homes" rather than "sister's home."

The order entered by the court on April 4, 1987, as the result of the March 20, 1987 hearing, as abstracted, provided:

> (1) The Juvenile Court of Perry County entered an Order placing custody of Donna Shipman with the Southern Christian Children's Home.

(2) The child now desires to live with family in Chicago, Illinois.

(3) Southern Christian Children's Home approves of the request.

(4) Donna Shipman has been residing continuously in excess of one year at the home of Edwin and Gerald [Gerrell] Boudra.

(5) Donna Shipman does not have a legal guardian, and resides outside the care and control of previously appointed custodians; Donna Shipman should be placed in the care and custody of Edwin and Gerald [Gerrell] Boudra.

(6) Arkansas Department of Human Services should proceed promptly to request a home study of the sisters of Donna Shipman, namely Debbie Lombardo and Tammy Shipman; such request should be expedited together with periodic inquiries to ensure prompt response.

(7) Subject to receipt of a favorable report on at least one of the homes, the child shall be permitted to visit the home of said sister or sisters with a request and direction of the State of Illinois for monitoring the situation.

(8) Arkansas Department of Human Services shall arrange for, and bear the expense of travel to Chicago, Illinois, and return at the conclusion of the summer or sooner upon election of Donna Shipman.

(9) Arkansas Department of Human Services is directed to maintain a protective service case.

(10) Arkansas Department of Human Services shall provide all reasonable available services.

(11) The above placement is the least restrictive appropriate alternative.

(12) The whereabouts of Donnie Ray Shipman, the natural father, should be ascertained with notice to him of these proceedings.

(13) The court retains jurisdiction.

(14) This matter should be reviewed during the month of August, 1988.

It is so ordered the 2nd day of April, 1987.

Ms. Shipman went to Chicago and returned. A further hearing was held on August 21, 1987. Ms. Hendrix testified she was a DHS supervisor familiar with the case. She stated that Ms. Shipman went to Chicago on June 22, 1987, and returned on July 25 of that year, and that DHS was maintaining protective services in the case while custody remained with the Boudras. In response to questions from the bench, Ms. Hendrix stated that Ms. Shipman had not had a physical examination but that she had an orthodontic report from a Dr. Vaughan.

Mr. Lilly testified that he is a Perry County social worker and that he had spoken with Illinois authorities who, at his request, had performed a home study on the home of Debbie Lombardo. He was assured the home would be sufficiently stable to allow Ms. Shipman to visit.

Mr. Boudra testified that after the March hearing Ms. Shipman went to a doctor for a "medical checkup . . . not a complete physical," and that she had seen a dentist since her return from Chicago.

Ms. Shipman testified about going to the dentist, not an orthodontist, and about having seen a doctor after her return from Chicago. She said the dentist had told her she did not need any orthodontic care, but she thought she needed braces. She also testified that during her stay in Chicago she had a falling out with her sister, Debbie, in whose home she was staying, and thereafter she stayed with the other sister, Tammy.

At the conclusion of the hearing, the judge read to Mr. Westerfield the portion of his earlier order requiring home studies be done on the homes of both Tammy Shipman and Debbie Lombardo and "[t]hat subject to receipt of a favorable report on at least one of the homes . . . said child shall be permitted to visit. . . ." The judge then noted that only one home study had been performed. Mr. Westerfield responded that when it was learned that Tammy Shipman was single no further study was done on her home. The court then noted that the written home study report done by the Illinois authorities stated that Debbie

Lombardo was living in a "common law" relationship with Mr. Lombardo, thus the fact that Tammy was single was hardly an excuse for not doing a study on both homes, since Debbie was technically single too.

The judge then inquired of Mr. Westerfield why the medical checkup and orthodontic checkup "as ordered in the Court's Order that you presented" were not completed. Mr. Westerfield replied "I apparently didn't have the specific notation in the listing that I made to help prepare the court order that was entered."

The court then ruled from the bench that DHS had not complied with the previous order which required that home studies be performed with respect to both sisters. Further rulings were that Ms. Hendrix and Mr. Lilly were in contempt and were to be incarcerated in the Perry County jail until they purged themselves of contempt which Ms. Hendrix could do by paying $25, and Mr. Lilly by paying $50, to the clerk or sheriff. Mr. Westerfield was also held in contempt for failure to include in the precedent for the court's earlier order the court's specific directions for obtaining physical and orthodontic examinations for Ms. Shipman. Mr. Westerfield was ordered to jail until he paid $25. Mr. Westerfield voiced his objections to the contempt rulings.

Mr. Westerfield prepared a proposed order reflecting the court's rulings. The proposed order included the contempt holdings. The court did not adopt the proposed order but entered two separate orders apparently prepared by the court. An order entered August 28, 1987, contained the contempt rulings. An order entered September 4, 1987, stated that DHS had not provided "appropriate" services for Ms. Shipman and "should offer all reasonable appropriate services."

DHS appealed to the Arkansas Court of Appeals. The contempt citations were argued as a part of that appeal, but the court of appeals properly declined to review them as Lilly, Hendrix, and Westerfield were not parties to the appeal. The court of appeals declined to reverse the order with respect to DHS because the trial court had done exactly that which was asked by DHS by continuing custody of Ms. Shipman in the Boudras and providing protective services for her. *Arkansas Dept. of Human Services* v. *Shipman*, 25 Ark. App. 247, 756 S.W.2d 930 (1988).

The appeal of the contempt citation was not taken in a timely manner; however, upon motion of Lilly, Hendrix, and Westerfield, this court permitted a belated appeal pursuant to Ark. R. Crim. P. 36.9. The motion contended Lilly and Hendrix were represented by counsel (Westerfield) who was ineffective in not appealing the contempt order. It was also contended that Westerfield was not given notice of the contempt order.

## 1. Belated appeal

On behalf of Judge Earl the attorney general argues no notice was given of the motion for belated appeal. The appellants dispute that contention. It is contended this court improperly granted the motion and thus should not address the merits of the case. The attorney general contends that Lilly and Hendrix were not represented by Westerfield but were merely witnesses at the hearing and thus in no position to claim ineffectiveness of counsel. It is also contended that Westerfield had a duty to keep up with documents filed in the case.

Pursuant to Rule 36.9. the supreme court determines "good reason" for belated appeal. After Westerfield's proposed order containing the contempt citations was rejected by the court, the record shows he received the court's September 4, 1987, order which contained nothing about the contempt citations. He then sought unsuccessfully to have the order amended to include the contempt citations. The attorney general does not deny Westerfield's contention that he was not served with the August 28, 1987, order which contained the contempt citations. We recognized at the time we granted the belated appeal, as we do now, that an attorney has a duty to remain abreast of the progress of a case in which he is involved, *Jetton* v. *Faucett,* 264 Ark. 69, 568 S.W.2d 42 (1978). We again conclude, however, that there was, in the circumstances presented here, good reason for the belated appeal. Westerfield would have had no reason to suspect that there was a separate contempt order resulting from the March 20, 1987, hearing. It is apparent from the record that, when he objected during the hearing to the contempt citations, he was doing so on behalf of himself and the other DHS employees. Nor does the attorney general argue that Judge Earl is unfairly prejudiced by permitting the appeal with respect to Lilly and Hendrix.

## 2. Sufficiency of the evidence

In its opinion, referred to earlier, the court of appeals "reluctantly" concluded that it could not review the propriety of the contempt citations, and stated that "the action of the trial court was inexcusable and could not withstand appellate review. . . ." 25 Ark. App. at 252, 756 S.W.2d at 933. We agree.

The appellants have abstracted the March 20, 1987, hearing only to the extent of showing the operative remarks of Judge Earl. The attorney general has not supplemented the abstract. Nothing in those remarks could be interpreted as requiring Lilly or Hendrix to provide a complete physical and orthodontic examination for Ms. Shipman, and there is nothing there to show Westerfield was directed to include such items in his proposal of an order to the court. While it was not necessary for us to do so, we have examined the record and found it could easily have been concluded from Judge Earl's remarks that he intended the physical and orthodontic examination be conducted before a transfer of custody to one of the Chicago sisters rather than prior to a visit.

The order resulting from the March 20, 1987, hearing contained nothing about physical or orthodontic examinations. The order did state that DHS "should proceed promptly to request a home study of the sisters of Donna Shipman, namely Debbie Lombardo and Tammy Shipman; . . . ."

Mr. Lilly testified at the August 21, 1987, hearing that he spoke with Illinois authorities and was informed that they could not produce a written home study report within the required time. He received permission through interstate compact authorities to obtain a verbal report. He testified he had "recently" received the written report.

At the close of the hearing, the court noted that his earlier order had specified that studies "be done" on the homes of both sisters. Mr. Westerfield responded that once it was determined that Tammy Shipman was single "we determined there was no necessity to go farther with the study on her home."

The attorney general concedes these were criminal contempt citations. As we wrote in *Wood* v. *Goodson*, 253 Ark. 196, 485 S.W.2d 213 (1972), "the general rule is that before a

person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied." 253 Ark. 249, 704 S.W.2d 614 (1986). There is nothing in either the court's remarks at the March 20, 1987, hearing, as abstracted, or in its order based on that hearing to require DHS or Mr. Lilly or Ms. Hendrix or Mr. Westerfield to obtain a complete physical or orthodontic examination for Ms. Shipman. No evidence whatever was presented to show that they did not "proceed promptly to request" home studies on the homes of the two sisters. To the contrary, the only information before the court on this point was the statement of Mr. Westerfield that the investigation proceeded to the point of determining that Tammy Shipman was a single person, and it was terminated as to her at that point because it was felt that a more stable environment would be required.

We review criminal contempt citations to determine if there is substantial evidence to support the finding of the trial court. *Warren* v. *Robinson*, 288 Ark. 249, 704 S.W.2d 614 (1986). Given the terms of the trial court's remarks and the resulting order, we find no substantial evidence of a violation.

### 3. Lack of notice

While we need go no further than pointing out that there was no substantial evidence to show that there was a violation of a court order specific enough to constitute a command, we take this opportunity again to refer to the requirements to which courts must adhere in levying criminal contempt citations.

At the time the court made its decision that Lilly, Hendrix, and Westerfield were in contempt, none of them had received notice that he or she was charged with contempt. We have held, most recently in *Fitzhugh* v. *State*, 296 Ark. 137, 752 S.W.2d 275 (1988), that "criminal penalties may not be imposed on an alleged contemner who had not been afforded the protections that the Constitution requires of criminal proceedings," citing *Hicks* v. *Feiock*, 485 U.S. 624 (1988). We held in *Fitzhugh* that those protections include notice of the charges.

112

Reversed and dismissed.