Cite as 2022 Ark. App. 90

# ARKANSAS COURT OF APPEALS
DIVISIONS II, III, AND IV
No. CV-19-428

SHELLEY DIANE COOPER AND
ANNETTE MICHELLE EDELEN,
INDIVIDUALLY AND AS TRUSTEES OF
THE DOLORES S. BRYANT REVOCABLE
LIVING TRUST

APPELLANTS

V.

HORACE E. BRYANT AND NANCY
ELIZABETH EDELEN, INDIVIDUALLY
AND IN HER CAPACITY  AS TRUSTEE OF
THE DOLORES S. BRYANT REVOCABLE
LIVING TRUST

APPELLEES

Opinion Delivered February 23, 2022

APPEAL FROM THE BENTON
COUNTY CIRCUIT COURT
[NO. 04PR-16-891]

HONORABLE XOLLIE DUNCAN,
JUDGE

MOTION TO DISMISS APPEAL
GRANTED; APPEAL DISMISSED
WITHOUT PREJUDICE

**LARRY D. VAUGHT, Judge**

This is a dispute over a trust prepared by the decedent, Dolores S. Bryant. Appellee

Horace Bryant, the decedent's surviving spouse and stepfather to the appellants Shelley

Cooper and Annette Edelen and separate appellee Nancy Edelen, the decedent's daughters,

filed suit to reform the trust, alleging that conflicting trust provisions could operate to

prejudice his right to occupy the residential real estate for his lifetime. The circuit court

removed appellants as trustees of the trust, granted Horace a life estate, and awarded

attorney's fees to the appellees. This appeal challenges those rulings. However, we do not

reach the merits of the appeal because Horace has filed a motion to dismiss the appeal,

arguing that appellants failed to file a timely notice of appeal. Shelley and Annette have filed

their own motions contending that any dismissal should be without prejudice because the order appealed from lacks finality. We conclude that the order appealed from lacks finality. We therefore dismiss the appeal without prejudice.

This is a dispute over a trust created by Dolores. Among the trust assets was a twenty-acre tract of real property with a residence where Dolores and her husband, Horace, resided. Upon Dolores's death, Horace was to be allowed to reside on the property until his death or remarriage. All net income from the trust was to be distributed to Horace. Upon Horace's death, the residence and surrounding acreage were to be distributed in equal shares to appellants Shelley and Annette and separate appellee Nancy, Dolores's daughters. Shelley, Nancy, and Annette were designated to serve as successor co-trustees after their mother's death to act collectively and jointly in such capacity by majority vote. The trust also contained an in terrorem clause whereby the interests of any person who "contests" or "in any other manner, attacks or seeks to impair or invalidate" any term of the trust shall be forfeited. A dispute-resolution clause was included among the trust's provisions. This clause set forth a procedure for the appointment of a special trustee to resolve disputes over the trust without resorting to litigation. Shelley and Annette contended below that failure to comply with the dispute-resolution provision also triggers the no-contest clause.

Dolores Bryant died on July 14, 2013. The parties agree that no action to administer the trust was taken for several years after Dolores's death.

When Horace learned that Shelley and Annette had proposed to distribute the home property and residence from the trust to themselves without making provision for his rights

and interest, he filed suit against Shelley, Annette, and Nancy, individually and as co-trustees, seeking to reform the trust, alleging that conflicting trust provisions could operate to prejudice his right to occupy the residential real estate for his lifetime. After filing several motions to dismiss Horace's petition that were denied, appellants filed a counterclaim against Horace and a cross-claim against Nancy, contending that the interests of Horace and Nancy in the trust were forfeited under the trust's no-contest provision.

After granting Horace's motion for partial summary judgment on the reformation issue and following a bench trial, on December 10, 2018, the circuit court entered a document titled "Findings of Fact and Conclusions of Law," determining the merits of the remaining issues. The court, among other things, removed appellants as co-trustees of the trust and granted Horace a life estate in the residential property. The court also directed Nancy, as the sole trustee, to distribute the accumulated trust income to Horace. The court later awarded attorney's fees to the appellees in February 2019. Appellants filed their notice of appeal from both the "Findings of Fact and Conclusions of Law" and the orders on attorney's fees on February 25, 2019.

After the appeal was perfected, Horace filed a motion to dismiss the appeal, and the appellants filed a motion to remand for entry of a final order or, in the alternative, a motion to dismiss the appeal without prejudice. Horace argued that the appeal should be dismissed with prejudice because appellants failed to file a timely notice of appeal from what Horace contends was a final, appealable order. Appellants argue that the appeal is taken from a nonfinal order and should be dismissed without prejudice.

3

The starting point is the parties' disagreement over whether the circuit court's December 10, 2018 Findings of Fact and Conclusions of Law constitutes an appealable order. This analysis requires us to ask two questions: was the document an order, and if so, was it appealable? Regarding the first question, we look to the substance of the document to determine its nature.

> Decision of this appeal, then, depends entirely upon the determination of the character of the first court action. Formal requirements for a judgment in Arkansas are few. It is the final determination of the right of parties in an action. . . . A judgment must specify clearly the relief granted or other determination of the action. The few basic requirements must be met and the judgment must clearly show that it is the act of the law, pronounced and declared by the court upon determination and inquiry. While a rather technical application was made of this rule in the cited case, strict formality in language used to express the adjudication of the court is not necessary and a "judgment" will be tested by its substance, not its form. The name by which it is called by the court is not controlling. We have held that the designation or title given a pleading is not controlling, but that its effect, character and sufficiency are to be determined by its substance regardless of what it is called. There is no reason we should not apply the same rule to a court order.

*Thomas v. McElroy*, 243 Ark. 465, 468, 420 S.W.2d 530, 532 (1967) (internal citations omitted). Despite the fact that *Thomas* predates the Arkansas Rules of Civil Procedure, it has been consistently cited since the Rules' adoption for its holding as to what constitutes a judgment. *See* David Newbern, John Watkins & D.P. Marshall Jr., *Arkansas Civil Practice & Procedure* § 31-1 at 651–52 (5th ed. 2010). Our rules of civil procedure do not, in any event, set out a list of formal requirements for a judgment other than to provide a definition of "judgment" that includes "a decree and any order from which an appeal lies," Ark. R. Civ. P. 54(a), and a requirement that a judgment be set forth "on a separate document." Ark. R. Civ. P. 58; *see also White v. Mattingly*, 89 Ark. App. 55, 199 S.W.3d 724 (2004).

4

Applying the *Thomas* test of substance to the December 10, 2018 Findings of Fact and Conclusions of Law in this case, we conclude that the circuit court entered an order instead of mere findings and conclusions. Supporting this conclusion is the circuit court's internal reference to its decision as an "Order," stating that Nancy should distribute all trust income accrued "up to the date of the entry of this Order" to Horace. The court also dismissed appellants' counterclaim against Horace and concluded the decision with the words "IT IS SO ORDERED" just above the judge's signature.

Appellants argue that the Findings of Fact and Conclusions of Law, even if deemed an order, lacks finality because it fails to address, among other things, Horace's claim for an inventory and accounting; Nancy's cross-claim against appellants for indemnity and possible forfeiture of appellants' interest in the estate; and Horace's request to hold appellants in contempt for failing to distribute the accumulated funds. They argue that because the Findings of Fact and Conclusions of Law lacked finality, it was never appealable, requiring us to dismiss the case without prejudice due to lack of jurisdiction.

Appellees, on the other hand, urge us to follow *Sloan v. Arkansas Rural Medical Practice Loan & Scholarship Board*, 369 Ark. 442, 445, 255 S.W.3d 834, 837 (2007), in which the Arkansas Supreme Court held that appellate courts must first consider the jurisdictional issue related to the timeliness of the notice of appeal before proceeding to an analysis of any finality issues. "It is well established that this court is without authority to overrule a decision of the supreme court." *Box v. State*, 348 Ark. 116, 71 S.W.3d 552 (2002) (quoting *Brown v.*

5

*State*, 63 Ark. App. 38, 44, 972 S.W.2d 956 (1998)). The question, then, is whether *Sloan* is applicable to the case at bar.

We hold that it is not. *Sloan* does not apply here because we cannot hold litigants to a "timeliness" requirement if they are never put on notice that the time has begun to run. In *Sloan*, the finality issue was related to Rule 54(b) and that rule's requirements for certifying an otherwise nonfinal order for appeal. It made sense in *Sloan* for the Arkansas Supreme Court to decline to reach the merits of whether the Rule 54(b) certificate in that case was sufficient to establish appellate jurisdiction because it had already determined that the notice of appeal from the order containing the Rule 54(b) certificate was obviously untimely. The finality issue was, therefore, essentially moot given the lack of jurisdiction resulting from the untimely appeal. While the rule that the court articulated in *Sloan* makes sense in that context, it does not make sense where, as here, the order in question lacked either a Rule 54(b) certificate or any other indicia of appealability that would have put the parties on notice that their time for filing a notice of appeal had started to run.

We therefore distinguish *Sloan* from the case at bar. Here, the court's Findings of Fact and Conclusions of Law did not, on its face, trigger the clock to begin running on the appellant's opportunity to file a timely notice of appeal. The Findings of Fact and Conclusions of Law was not titled an order, was not accompanied by a judgment, and was glaringly nonfinal because it failed to dispose of multiple claims and parties. Therefore, it was insufficient to put the parties on notice that the time for filing an appeal had started to

run. In fact, the record indicates that the appellants filed their notice of appeal only when it later became clear that no subsequent final order would be forthcoming from the court.

The dissent notes that *Sloan* takes a categorical approach that an untimely notice of appeal *always* trumps a finality problem. We do not dispute that this was the language used in *Sloan*, and we acknowledge that we have no authority to overrule the supreme court. In order to avoid a grave miscarriage of justice, we distinguish *Sloan* and hold that the rule that an appellate court must evaluate the timeliness of an appeal before addressing any finality issues is inapplicable when the order in question cannot be deemed to have put counsel on notice that the time for filing an appeal had begun to run. Because the Findings of Fact and Conclusions of Law in this case did not put the parties on notice that the order presented an immediate opportunity to appeal, the Arkansas Supreme Court's insistence that we address timeliness first does not apply, and we dismiss without prejudice for lack of a final order.

Appellants also appeal from the February 6 and February 19 orders awarding attorney's fees to Horace and Nancy. The appeal from the fee orders, though a collateral matter, must also be dismissed without prejudice for lack of finality. The supreme court has addressed the issue of an appeal from a nonfinal order that also includes an attorney's-fee issue:

> It is of no consequence to Appellants that the matter of attorney's fees is ordinarily viewed by this court as a collateral issue, separate from the merits of a case. This court's jurisdiction is not invoked until a final order has been entered in the trial court, with the exception of those immediately appealable orders listed in Ark. R. App. P.–Civ. 2. Thus, a final order is a prerequisite. Without such a final order,

7

no appeal may be entertained, even on a collateral issue such as attorney's fees. Accordingly, because Appellants appealed from the order denying attorney's fees prior to the entry of a final judgment under Rule 54(b), their appeal must be dismissed for lack of jurisdiction.

*Dodge v. Lee*, 350 Ark. 480, 486–87, 88 S.W.3d 843, 847 (2002). Thus, we need a final order to have jurisdiction to hear the appeal from the fee issue. *Id.*; *see also Crain Auto. Holdings, LLC v. Morgan*, 2020 Ark. App. 510, at 4 (Gruber, J., concurring); *Am. Express Bank, FSB v. Davenport*, 2015 Ark. App. 705; *Peraza v. United Fin. Cas. Co.*, 2015 Ark. App. 5, at 4, 453 S.W.3d 693, 695; *Pridemen Team, Inc. v. Newton*, 2011 Ark. App. 132. Because we do not have a final order, we cannot consider the appeal of the attorney's fee issue. *Dodge, supra.*

Motion to dismiss appeal granted; appeal dismissed without prejudice.

BARRETT and MURPHY, JJ., agree.

VIRDEN and HIXSON, JJ., concur.

HARRISON, C.J., and KLAPPENBACH, GRUBER, and BROWN, JJ., dissent.

**KENNETH S. HIXSON, Judge, concurring**. I vividly remember frightfully sitting in first year Contracts class with Professor Milton Copeland as if it were yesterday. As Professor Copeland hurled his copy of the Restatement 2nd of Contracts across the room, he thundered, "If we don't read the rules, why do we need this?"[1] Apparently, Judge Mike Murphy had a similar experience in law school a few years later. In his concurring opinion in *Latham*, Judge Murphy wrote the following:

---

[1]Professor Copeland later sheepishly apologized for his theatrics.

8

"Read the dadgum statute!"  So implored the late Albert Matthew Francis ("Al") Witte to the first-year, section-four law-school students circa 1983—in more colorful language.  Or, as he would tenderly apply it in this case, "Read the rules. Closely."

*Latham v. State*, 2019 Ark. App. 323, at 6, 578 S.W.3d 732, 735, *overruled by Pettry v. State*, 2020 Ark. App. 162, 595 S.W.3d 442.

"Read the rules" is so ingrained into law students and lawyers that it should become second nature.  It is THE starting point in any legal analysis.  Applying rules as written give us reasonable, consistent, and predictable results on which the bench and the bar can rely.  The rationale for this application is probably stated best in the following quote from Justice Paul Danielson: "If we interpret our rules on a case-by-case basis, being swayed by the result of our interpretation, why then do we provide these things we call rules?"  *Jonesboro Healthcare Ctr., LLC v. Eaton-Moery Envt'l Servs., Inc.*, 2011 Ark. 501, 385 S.W.3d 797 (Danielson, J., dissenting).

Not only do we have rules; we have rules to interpret rules.  When construing a court rule, we use the same means and canons of construction used to interpret statutes.  *State ex rel. Rutledge v. Purdue Pharma L.P.*, 2021 Ark. 133, 624 S.W.3d 106.  The principal rule of statutory construction is to construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language.  *Id.*  That certainly makes sense.  We also have rules to distinguish between general rules and specific rules.  Further, just as it has long been the law in Arkansas that a general statute must yield when there is a specific statute involving the particular subject matter, a general rule must also yield when

9

there is a specific rule involving the particular subject matter. *See Arkansas River Rts. Comm. v. Echubby Lake Hunting Club*, 83 Ark. App. 276, 126 S.W.3d 738 (2003).

I have included this preamble to my concurrence to draw attention to a singular purpose. In this case, there is a specific rule directly on point which according to the majority opinion and dissenting opinion can be overlooked with impunity. I cannot overlook a specific rule that is right on point, dispositive, and upon which the appellant justifiably relied.

Both the majority and dissenting well-reasoned opinions go to great lengths to explain their respective reliance on and exception on *Sloan v. Ark. Rural Med. Prac. Loan & Scholarship Bd.*, 369 Ark. 442, 446, 255 S.W.3d 834, 838 (2007), which held that a determination for Rule 2 of the Arkansas Rule of Appellate Procedure–Civil "purposes is always secondary to whether a timely notice of appeal and record has been filed." However, both opinions omit a more fundamental threshold inquiry that I believe is dispositive to the case. Remember, this contested case was effectively decided by the circuit court in a document styled "Findings of Fact and Conclusions of Law."[2] The first question therefore should be are "Findings of Fact and Conclusions of Law" a *judgment, decree, or order* which is appealable in the first place? Rule 4(a) of the Arkansas Rule of Appellate Procedure–Civil specifically provides that a notice of appeal shall be filed within thirty (30) days from the *entry of the judgment, decree or order* appealed from. In other words, Rule 4(a) presupposes that the circuit court entered a

---

[2]Sometimes referred to herein as simply "Findings and Conclusions" for brevity.

judgment, decree, or order from which the parties may appeal. Thus, even before we determine the timeliness of the appeal under Rule 4 and then whether such a judgment, decree, or order is final for purposes of Rule 2 as mandated by our supreme court in *Sloan*, we must first determine whether the circuit court's "Findings of Fact and Conclusions of Law" are a judgment, decree, or order (collectively referred to hereafter as a judgment). Although the majority opinion briefly addresses this issue and concludes that they are, I conclude that they are not.

What is the starting point for such an analysis? How about read the rule. Arkansas Rule of Civil Procedure 52(a)(1) states, "If requested by a party at any time prior to entry of judgment, in all contested actions tried upon the facts without a jury, the court *shall find the facts specially and state separately its conclusions of law* thereon, and judgment *shall be entered pursuant to Rule 58*[.]" (Emphasis added.) This is a fairly elementary analysis. Step 1: Did a party request findings of fact and conclusions of law? Answer: yes. Step 2: If a party requested findings of fact and conclusions of law, how is the subsequent judgment to be entered? Answer: "[the] judgment shall be entered pursuant to Rule 58." Ark. R. Civ. P. 52(a)(1). On to Rule 58.

Arkansas Rule of Civil Procedure 58 provides the following in pertinent part:

> upon a decision by the court granting or denying the relief sought, the court may direct the prevailing party to promptly prepare and submit, for approval by the court and opposing counsel, a form of judgment or decree which shall then be entered as the judgment or decree of the court. The court may enter its own form of judgment or decree or may enter the form prepared by the prevailing party without the consent of opposing counsel. A judgment or decree shall omit or redact confidential information as provided in Rule 5(c)(2).

11

*Every judgment or decree shall be set forth on a separate document.*

(Emphasis added.) Back to our elementary analysis. Apply Rule 58. Step 3: Was there a decision by the court granting or denying relief sought? Answer: Yes. Step 4: If yes, then a form of judgment shall be entered as the judgment or decree of the court. Step 5: How is that judgment set forth? Answer: Every judgment shall be set forth on a separate document.

Here is the scheme specifically created for cases disposed of by Findings of Fact and Conclusions of Law. Rule 52 provides that the court *shall* find the facts specially and state separately its conclusions of law thereon, then the court *shall* enter a judgment pursuant to Rule 58, and then Rule 58 provides that the judgment *shall* be set forth on a separate document. The rationale behind this rule is self-evident. For purposes of commencing the thirty-day period during which the notice of appeal must be timely filed, the time commences with the filing of the judgment. This is not unimportant semantics because it creates fatal consequences on appeal. When does the time period commence when you have Findings and Conclusions: On the filing of the Findings and Conclusions or upon the filing of the judgment? Well, that certainly could be confusing. Perhaps the drafters of these rules had this very concern in mind when they drafted Rules 52 and 58 and specifically addressing Findings and Conclusions vis-à-vis judgments emanating therefrom. According to the Rules, when the case is disposed of by Findings and Conclusions, a judgment on a separate document *shall* be filed. There—that clears up any ambiguity or confusion. A black and

white rule we all can live with.  The thirty-day notice-of-appeal window commences with the filing of the judgment.

This problem was also addressed in David Newbern, John Watkins & D.P. Marshall Jr., *Arkansas Civil Practice & Procedure* § 31-1 at 651–52 (5th ed. 2010).  An excerpt provides:

> *The judgment is to be distinguished . . . from the court's written findings of fact, conclusions of law, and opinions on which the judgment is based. . . .*
>
> Although the Supreme Court thus eschewed mere formality as a basis for determining existence of a judgment, correct form is nonetheless important, as it may save a dispute.  *One clear requirement, specified in Ark. R. Civ. P. 58, is that the judgment "shall be set forth on a separate document."*  The document should have a caption as other papers in the proceeding and should be titled "Judgment."
>
> . . . .
>
> In a contested case tried by the court without a jury, the court must, if a party so requests, make findings of facts and conclusions of law.  While it is not necessary that these predicates of the judgment be stated in the same document as the judgment, it is often convenient and useful to put them there.  Careful draftsmanship requires that each portion of such a document be labeled.  For example, such a document could begin with the case caption, then have a section entitled "Findings," then a section entitled "Conclusions," and last "Judgment," followed by date of entry and signature blocks for the judge and the party or attorney approving as to form...."

(Internal citations omitted.)  As David Newbern, John Watkins & D.P. Marshall Jr., so eloquently and perceptively observed: the clear requirement, specified in Arkansas Rule of Civil Procedure 58, that the judgment must be set forth on a separate document "may save a dispute."  It would have saved this one.

Perhaps, one would argue that these rules are merely guidelines, suggestions, or best practices.  But, not so fast.  The word "shall" is contained in Rules 4, 52, and 58, and the significance of the use of this word cannot be overstated.  Our supreme court has repeatedly

13

stated that "[t]he word 'shall' means mandatory compliance unless it would lead to an absurd result." *Tollett v. Wilson*, 2020 Ark. 326, at 5, 608 S.W.3d 602, 606; *see Vaughn v. Mercy Clinic Ft. Smith Communities*, 2019 Ark. 329, 587 S.W.3d 216. Therefore, the word "shall" as it is used in Rules 4, 52, and 58 must be construed to mean mandatory compliance unless it leads to an absurd result.

So, what happened here. The court entered Findings of Fact and Conclusions of Law. Appellants waited for the court to either enter a judgment or appoint one of the attorneys to draft such a judgment. Appellants' attorney even contacted the court three times requesting a judgment or appointment. Admittedly, the judgment could be very simple and abbreviated such as, "The court adopts its Findings of Fact and Conclusions of Law and enters judgment as set forth therein." But importantly, there would be a judgment on a separate document that satisfies Rule 58 which would have clearly commenced the thirty-day notice-of appeal-window. Instead, here we have a hybrid which creates the very problem that David Newbern, John Watkins & D.P. Marshall Jr., warned us about.

What was this hybrid deviation from Rules 52 and 58? At the end of the thorough 21-page, 92-paragraph Findings of Fact and Conclusions of Law and just above the court's signature, the phrase "It is so ordered" was inserted. A judgment on a separate document was never entered. As previously mentioned, the appellants' attorney contacted the court three times requesting a judgment to be entered or an appointment to draft a judgment. The circuit court's case manager responded to these communications in an email on February 13, 2019. She stated in relevant part that "[t]he document entitled Findings of Fact

14

and Conclusions of Law by the Court filed December 10, 2018 ending with 'IT IS SO ORDERED' constitutes, in the opinion of the Court, that final order and nothing further was required except the separate orders regarding the award of attorney fees." The very avoidable predicament perceived by David Newbern, John Watkins & D.P. Marshall Jr., was conceived.

So, here is the question. Despite the clear and unambiguous language in Rules 52 and 58 that specifically require a judgment to be set forth in a separate document when a case is disposed of on Findings and Conclusions, does the inclusion of the phrase "It is so ordered" magically transform an otherwise unappealable document into a final judgment which commences the thirty-day notice-of-appeal window? I do not believe it does. I find our supreme court's opinion in *Thomas v. McElroy*, 243 Ark. 465, 420 S.W.2d 530 (1967), to be instructive on this point. Despite the fact that *Thomas* predates our Rules of Civil Procedure, it has been consistently cited since the Rules' adoption for its holding as to what constitutes a judgment. *See* David Newbern, John Watkins & D.P. Marshall Jr., *Arkansas Civil Practice & Procedure* § 31-1 at 651–52 (5th ed. 2010). In *Thomas*, McElroy had filed suit against Thomas for unpaid rent. On March 25, 1966, a bench trial was held, and the trial court entered Findings of Fact and Conclusions of Law. At the bottom of the Findings and Conclusion was the phrase "It is so ordered" followed by the trial court's signature. Almost a year later, on March 3, 1967, a judgment was entered. Thomas appealed the March 3, 1967, judgment. The *Thomas* court could have held that the March 25, 1966, Findings of Fact and Conclusions of Law was a judgment, that appellant had failed to timely appeal, and

15

dismissed the appeal. Instead, in reviewing the Findings of Fact and Conclusion of Law vis-à-vis the Judgment, the Supreme Court explained that "decisions, opinions, and findings of a court do not constitute a judgment or decree" but "merely form the bases upon which the judgment or decree is subsequently to be rendered and are not conclusive unless incorporated in a judgment or a judgment be entered thereon." *Id.* at 469, 420 S.W.2d at 533. It instead analogized them to jury verdicts: "They are more in the nature of the verdict of a jury and no more a judgment than such a verdict." *Id.*, 243 Ark. at 470, 420 S.W.2d at 533. Applying those principles to the decree in *Thomas*, our supreme court held that "the action of the court on March 25, 1966, was deficient as a final determination of the rights of the parties." *Id.* at 469, 420 S.W.2d at 534.

The same is true here. Findings of Fact and Conclusions of Law are not a judgment. As stated in *Thomas*, despite the fact that the Findings and Conclusions included the phrase "It is so ordered," the action of the circuit court was deficient as a final determination of the rights of the parties. Appellants had the right to justifiably rely on the unambiguous language in Rules 52 and 58. As stated by Justice Danielson, "If we interpret our rules on a case-by-case basis, being swayed by the result of our interpretation, why then do we provide these things we call rules?" *Jonesboro Healthcare Ctr., LLC v. Eaton-Moery Envt'l Servs., Inc.*, 2011 Ark. 501, 385 S.W.3d 797 (Danielson, J., dissenting). Accordingly, I would dismiss without prejudice on this basis for a lack of jurisdiction as we have previously done when an appeal is prematurely filed from a letter opinion. *See Panhandle Oil & Gas, Inc. v. BHP Billiton Petroleum (Fayetteville) LLC*, 2016 Ark. App. 376, 499 S.W.3d 667.

16

I concur with the majority opinion's conclusion that the appeal should be dismissed without prejudice for the reasons set forth in this concurrence.

VIRDEN, J., joins in this concurrence.

**RITA W. GRUBER, Judge, dissenting**.  I agree with the majority that this appeal must be dismissed. Where we part ways is that I believe case law requires the appeal to be dismissed with prejudice because it is untimely.

The supreme court's opinion in *Sloan v. Arkansas Rural Medical Practice Loan & Scholarship Board*, 369 Ark. 442, 255 S.W.3d 834 (2007), is controlling here. Like this case, *Sloan* involved an untimely notice of appeal. The supreme court rejected the Sloans' motion to dismiss their appeal under Ark. R. Civ. P. 54(b) for lack of a final order, stating that the appellate court must first consider the jurisdictional issue related to the timeliness of the notice of appeal before it proceeds to the finality issue. *Id.* at 445, 255 S.W.3d at 837. The court continued:

> The timely filing of the notice of appeal and record is a threshold jurisdictional prerequisite for this court. Rule 4(a) of the Arkansas Rules of Appellate Procedure– Civil states in relevant part that "a notice of appeal shall be filed within thirty (30) days from the entry of the judgment, decree or order *appealed from*." Ark. R. App. P.– Civ. 4(a) (emphasis added). As a matter of practice, our clerk will not allow an appeal to proceed without both a timely notice of appeal and record. The reason for this practice is that Ark. R. App. P.–Civ. 4 is paramount to appellate-court jurisdiction. The plain language of the rule requires that the notice of appeal be filed within thirty (30) days from the judgment decree or order *appealed from*. Rule 4(a). While Ark. R. App. P.–Civ. 2 sets forth the orders that are appealable, it is for the appellate court to determine whether the order properly fits within one of Rule 2's subsections once an appeal is lodged. For example, Ark. R. App. P.–Civ. 2(a)(11) provides that an appeal may be taken from an order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties if the circuit court has directed entry of a final judgment as to one or more but fewer than all the claims or parties and has

17

made an express determination that there is no just reason for delay and has executed the certificate required by Ark. R. Civ. P. 54(b). Whether an order has properly been appealed pursuant to Rule 54(b) is indeed a jurisdictional question, which this court may address sua sponte. *See, e.g.*, *Jones v. Huckabee*, 363 Ark. 239, 213 S.W.3d 11 (2005). However, such a determination for Rule 2 purposes is *always* secondary to whether a timely notice of appeal and record has been filed.

*Sloan*, 369 Ark. at 445–46, 255 S.W.3d at 837–38; *see also Massanelli v. Massanelli*, 2016 Ark. App. 90, at 5 (Harrison, J., concurring) (discussing *Sloan* and its implications); *Pockrus v. Morris*, 2020 Ark. App. 364, at 6, 608 S.W.3d 159, 162; *Fire Sys. Tech., Inc. v. First Cmty. Bank*, 2015 Ark. App. 334, 464 S.W.3d 125.

The majority dismisses the appeal without prejudice because the December 2018 order is not final. *Sloan* does not give us that option. Instead, *Sloan* takes a categorical approach that an untimely notice of appeal *always* trumps a finality problem, going so far as emphasizing the word "always" to demonstrate this. We, as an intermediate court, cannot carve out a finality exception from the supreme court's categorical pronouncement.

The manner in which the majority distinguishes *Sloan* turns *Sloan* on its head and puts finality before timeliness. The majority's statement that the order does not, on its face, put counsel and the parties on notice that the order in question is triggering the thirty-day clock for the filing of a notice of appeal is simply wrong. The very factors the majority cites in concluding that the "Findings of Fact and Conclusions of Law" is an "order" also serve to give that notice. In fact, this question has been addressed, to a meaningful degree, by the Arkansas Supreme Court in *Smith v. Estate of Howell*, 372 Ark. 186, 189–90, 272 S.W.3d

18

106, 109.[1]   Regardless, litigants and their attorneys have a duty to remain abreast of the

progress of a case in which they are involved. *Lilly v. Earl*, 299 Ark. 103, 109, 771 S.W.2d

277, 280 (1989); *Jetton v. Fawcett*, 264 Ark. 69, 73, 568 S.W.2d 42, 44 (1978). Moreover, the

distinction is unworkable and fails to achieve its intended result in this very case. For

example, Shelley and Annette should have also known that an appealable order was entered

when Horace and Nancy filed their separate motions seeking attorney's fees. Parties do not

generally file motions for attorney's fees unless the case is at an end. *See* Ark. R. Civ. P.

---

[1]Here is our supreme court's analysis and holding, both of which refute the position that a Rule 52-related order does not provide "notice" of the need to appeal, and that a comprehensive Findings of Fact and Conclusions of Law is "not a judgment" for purposes of Ark. R. App. P.–Civ. 3 and 4:

The issue presented in this appeal is whether the Findings of Fact and Conclusions of Law filed on October 11, 2006, was an order approving the settlement. Smith asserted that the Findings of Fact and Conclusions of Law was not an order. We disagree. An order is a determination by a court on "some subsidiary or collateral matter arising in an action not disposing of the case on the merits but adjudicating a preliminary point or directing some step in the proceedings." *Thomas v. McElroy*, 243 Ark. 465, 470, 420 S.W.2d 530, 533 (1967) (quoting 49 C.J.S. *Judgments* § 5 (1947)). There is no merit to Smith's claim that the circuit court failed to enter an order approving the settlement agreement.

Upon entry, the order approving the settlement was subject to appeal. *See West, supra.* Smith attempts to appeal the order now; however, he neither filed an objection pursuant to Ark. Code Ann. § 28-1-116(d) (Repl. 2004) to preserve the issue as part of the appeal from the order of final distribution nor did he file a timely notice of appeal to appeal the order separately. A timely filed notice of appeal is required to provide this court with appellate jurisdiction. *U.S. Bank v. Milburn*, 352 Ark. 144, 100 S.W.3d 674 (2003). Thus, this court lacks jurisdiction to address Smith's argument that the circuit court erred in approving the settlement. *Smith*, 372 Ark. at 189-190, 272 S.W.3d at 109.

54(e)(2) ("[T]he motion must be *filed and served no later than 14 days after entry of judgment*; *must specify the judgment* and the statute or rule entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought.") (Emphasis added.). Nancy filed her motion seeking attorney's fees and costs on December 21, 2018; Horace filed his motion on December 26. Although Shelley and Annette responded to the motions for attorney's fees on January 2, 2019, it was not until February 6 that they inquired of the circuit court about the entry of an appealable order. February 6 was also the day the court entered its order awarding attorney's fees to Horace. Thus, it was the neglect of appellants and their attorney, not the form of the order, that resulted in appellants' failing to file a timely notice of appeal.

I am authorized to state that Chief Judge Harrison and Judges Klappenbach and Brown join in this dissent.

*L. David Stubbs*; and *Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor* and *Tasha C. Taylor*, for appellants.

*Cochran Law Firm*, by: *Tamra Cochran*, for separate appellee Horace Bryant.